Frances A. Smith
State Bar No. 24033084
Jonathan Gitlin
State Bar No. 24064305
**Ross & Smith, PC**
700 North Pearl Street, Suite 1610
Dallas, Texas 75201
Telephone: 214-377-7879
Facsimile: 214-377-9409
Email: frances.smith@ross-and-smith.com
Email: jonathan.gitlin@ross-and-smith.com

**COUNSEL TO DEBTOR**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 24-34058** |
| **Cucina Antica Foods, Corp.,** | § | |
| | § | |
| | § | **CHAPTER 11** |
| | § | |
| **Debtor.** | § | |

**DEBTOR'S CHAPTER 11 PLAN OF LIQUIDATION**

Cucina Antica Foods, Corp. ("Cucina" or the "Debtor") hereby proposes the following *Chapter 11 Plan of Liquidation* pursuant to the provisions of section 1121 of the Bankruptcy Code:

**INTRODUCTION**

The Debtor is a family business that produced and sold high-quality, Italian tomatoes, pasta sauces, and other Italian food products. Prior to the Petition Date, the Debtor actively marketed its assets. Such marketing efforts continued post-petition and resulted in a sale of the Purchased Assets to Silver Palate for the Purchase Price Amount, which the Court approved on February 7, 2025. The Debtor's primary source of payment to creditors is the proceeds from the Sale, which includes the Royalties. The Plan provides that the Debtor's remaining assets (including its rights to receive the Royalties) be transferred to a Liquidation Trust and that creditors be paid from distributions from the Liquidation Trust.

The Plan provides for payment in full of Allowed Administrative, Professional, and Priority Tax Claims. The Plan also provides for six (6) Classes of Claims: three (3) classes of Secured Claims, a Class of General Unsecured Claims, a Class of Insider Claims, and a Class of Equity Interests. All Allowed Claims will be paid with distributions from the Liquidation Trust, with the Allowed Administrative, Professional, and Priority Tax Claims and VNB Secured Claims having priority, and other Secured Claims being paid next. Holders of Allowed General Unsecured Claims shall receive a pro-rata share of any distributions from the Liquidation Trust to be paid only after Allowed Administrative, Professional, Priority Tax, and Secured Claims are paid in full. Insider Claims shall also receive a pro-rata share of any distributions from the Liquidation Trust to be paid only after

1- Debtor's Chapter 11 Plan of Liquidation

Allowed General Unsecured Claims are paid in full. Equity Interests will be cancelled and holders shall receive a pro-rata share of any distributions from the Liquidation Trust to be paid only after all other Allowed Claims are paid in full.

Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, risk factors, and analysis of this Plan, and certain related matters.

**ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, PARTICULARLY HOLDERS OF CLAIMS AND EQUITY INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN. Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. If you do not have an attorney, you may wish to consult one.**

### ARTICLE I
### DEFINITIONS AND INTERPRETATION

1.1     Rules of Interpretation. Unless otherwise specified, all Section, Article, and Exhibit references in this Plan are to the respective Section in, or Article of, this Plan, as the same may be amended, waived or modified from time to time. Words denoting the singular number shall include the plural number and *vice versa*. In construing this Plan, the rules of construction set forth in sections 101 and 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006 shall apply. Where a creditor or holder of any right under this Plan is named by name, such naming shall include any successor-in-interest to any right of such creditor. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

1.2     Definitions. Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code. Unless otherwise provided in this Plan, the following terms have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

**"Administrative Claim"** means a Claim for any cost or expense of administration of the Bankruptcy Case under section 503(b) of the Bankruptcy Code, including, without limitation, any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930, and further including a Professional Claim.

**"Allowed"** means, with reference to a Claim, or any portion thereof, except a Professional Claim: (i) which has been scheduled as undisputed, noncontingent and liquidated in the Schedules in an amount other than zero or unknown, and as to which: (a) no Proof of Claim has been timely filed, and (b) no objection has been timely filed (as determined by applicable deadlines contained in the Plan, including the Claims Objection Deadline); (ii) as to which a Proof of Claim has been timely filed and either: ( a) no objection thereto has been timely filed (as determined by applicable deadlines contained in the Plan, including the Claims Objection Deadline), or (b) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; (iii) which has been expressly allowed under the provisions of the Plan; or (iv) which has been expressly allowed by Final Order of the Bankruptcy Court. For avoidance of doubt, a Disputed Claim shall not be Allowed unless allowed by a Final Order of the Bankruptcy Court.

**"Allowed Administrative Claim"** means: (a) an Administrative Claim that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order to Allow the same; or (b) an Administrative Claim which: (i) is incurred by the Debtor after the Petition Date in the ordinary course of business operations or pursuant to an order entered by the Bankruptcy Court granting automatic Administrative Claim status; (ii) is not disputed by the Debtor; and (iii) does not require approval from the Bankruptcy Court to become Allowed.

**"Allowed Priority Claim"** means a Priority Claim that has been Allowed (but only to the extent Allowed).

**"Allowed Secured Claim"** means a Secured Claim that has been Allowed (but only to the extent Allowed).

**"Allowed Unsecured Claim"** means an Unsecured Claim that has been Allowed (but only to the extent Allowed).

**"Asset Purchase Agreement"** means the Asset Purchase Agreement between the Debtor, as Seller, and Silver Palate, as buyer, dated January 30, 2025, pursuant to which Silver Palate acquired the Purchased Assets of the Debtor.

**"Avoidance Actions"** means any and all rights, claims or actions which the Debtor may assert on behalf of the Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 328, 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code.

"**Ballot**" means each of the ballots in the form of Official Form 314 (as revised December 2015) to be distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote on this Plan, on which the holder is to indicate acceptance or rejection of this Plan in accordance with the voting instructions and to make any other elections or representations required pursuant to this Plan or the Disclosure Statement Order.

**"Bankruptcy Case"** means Bankruptcy Case No. 24-34058 in the Bankruptcy Court.

**"Bankruptcy Code"** means 11 U.S.C. §§ 101, *et. seq.*, in effect as of the Petition Date and as have been or may be amended or supplemented since, to the extent that any such amendment or supplement is automatically applicable to the Bankruptcy Case by operation of law and not by operation of any election or choice.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time-to-time hereafter be amended.

**"Bar Date"** means April 22, 2025, for claims of persons other than Governmental Units, and 180 days after the Petition Date for claims of Governmental Units pursuant to Bankruptcy Rule 3002(c)(1).

3- Debtor's Chapter 11 Plan of Liquidation

**"Business Day"** means any day which is not a Saturday, a Sunday, or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

**"Causes of Action"** means any claim or cause of action of the Debtor or the Estate against any person, including on account of receivables, malpractice or professional negligence, theft, misappropriation, breach of fiduciary duty, overpayment, restitution, and any other claim or cause of action, and the Avoidance Actions.

"**Celtic Bank**" means Celtic Bank Corporation.

"**Celtic Bank Claim**" means any Claim of Celtic Bank, Bluevine, and/or First Corporate Solutions Inc.

**"Claim"** means a claim against the Debtor, the Estate, and/or property of the Debtor or the Estate, as such term is otherwise defined in section 101(5) of the Bankruptcy Code, and arising at any time prior to the Effective Date, including first arising after the Petition Date, regardless of whether the same would otherwise be a claim under said section 101(5) of the Bankruptcy Code.

**"Claims Objection Deadline"** means the date by which parties authorized by this Plan may file any objection to a Claim, which date shall be one-hundred and eighty (180) days after the Effective Date, except with respect to Administrative Claims as otherwise provided for herein and with respect to Disputed Claims.

"**Claims Register**" means the official register of Claims against and Equity Interests in the Debtor maintained by the Debtor.

**"Class"** means one of the categories of Claims and Equity Interests established under Article IV of this Plan.

"**Closing Date**" means the date on which the Sale closed.

"**Confirmation**" means the entry of the Confirmation Order on the Bankruptcy Court's docket.

**"Confirmation Date"** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

**"Confirmation Hearing"** means the hearing(s) before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

**"Creditor"** means the holder of any Claim entitled to distributions under this Plan with respect to such Claim.

"**Cucina**" means Cucina Antica Foods, Corp., the Debtor in Case No. 24-34058-11.

**"Debtor"** means Cucina Antica Foods, Corp. as debtor and debtor in possession of the Estate.

**"Disputed Claim"** means a Claim, or any portion thereof, except an Administrative Claim (or a Professional Claim), that: (i) has been disallowed by a Final Order of the Bankruptcy Court; (ii)

4- Debtor's Chapter 11 Plan of Liquidation

is identified in the Schedules in an amount of zero dollars, unknown dollars, or as contingent, unliquidated, and/or disputed, and as to which a Proof of Claim was not filed by the Bar Date; or (iii) is not identified in the Schedules and as to which no Proof of Claim has been filed or deemed filed by the Bar Date, if the filing of such Proof of Claim is otherwise required. With respect to an Administrative Claim and a Professional Claim, a "Disputed Claim" means any Administrative Claim to which an objection has been timely filed or litigation is pending.

**"Disclosure Statement"** means the Disclosure Statement with respect to this Plan, approved by the Bankruptcy Court as containing adequate information for the purpose of dissemination and solicitation of votes on confirmation of this Plan, either in its present form or as it may be altered, amended or modified from time to time.

**"Excluded Assets"** means those assets that are not Purchased Assets and were excluded from the Sale.

**"Effective Date"** means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Article VIII of the Plan have been satisfied.

**"Equity Interests"** means all stock or other securities evidencing any ownership of any equity interest of the Debtor.

**"Estate"** means the estate created for the Debtor pursuant to section 541 of the Bankruptcy Code and any other applicable provision thereof.

**"Estate Assets"** means all property and assets of the Debtor and the Estate, save and except for the Purchased Assets.  For the avoidance of doubt, Estate Assets includes all cash of the Debtor and the Estate and all rights to receive the Royalties under the Royalty Agreement, computers, servers and other hardware or software or licenses thereof,  and the tangible, physical assets in Debtor's offices and certain intellectual property that is not Purchased Assets, Avoidance Actions, and any other causes of action, and all other personal property of the Debtor and the Estate.

**"Executory Contract"** means, collectively, "executory contracts" and "unexpired leases" of the Debtor as of the Petition Date as such terms are used within section 365 of the Bankruptcy Code.

**"Final Decree"** means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

**"Final Order"** means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which: (a) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (b) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

**"Governmental Unit"** means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

**"Impaired"** means with reference to a Claim, a Claim that is impaired within the meaning of Bankruptcy Code § 1124.

**"Itria"** means Itria Ventures LLC, a creditor in this Bankruptcy Case.

5- Debtor's Chapter 11 Plan of Liquidation

"**Itria Claim**" means any Claim of Itria, Biz2Credit Inc., and/or CSC.

"**Liquidation Trust**" means the "*Cucina Antica Foods Liquidation Trust*" liquidating trust created under provisions of this Plan and the Liquidation Trust Agreement.

"**Liquidation Trust Agreement**" means the Liquidation Trust Agreement to be executed by the Debtor and the Liquidation Trustee, in substantially the same form as attached hereto as Exhibit A.

"**Liquidation Trust Assets**" means the Estate Assets, including any Causes of Action, which shall be vested in the Liquidation Trust under the provisions of this Plan.

"**Liquidation Trust Beneficiaries**" means the beneficiaries of the Liquidation Trust.

"**Liquidation Trustee**" means Jason Rae as the trustee of the Liquidation Trust and any of his successors.

"**Person**" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies or political subdivisions thereof.

"**Petition Date**" means December 13, 2024.

"**Plan**" means this *Debtor's Chapter 11 Plan of Liquidation*, either in its present form or as it may be altered, amended or modified from time to time.

"**Postconfirmation Bar Date**" means the first Business Day thirty (30) calendar days after the Effective Date.

"**Priority Claim**" means any Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Claim or that is a Secured Tax Claim.

"**Pro Rata**" means proportionally based on one's portion of the whole, and not per capita.

"**Professional**" means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

"**Professional Claim**" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court.

"**Proof of Claim**" means a written statement setting forth a Creditor's Claim and conforming substantially to the appropriate official form.

"**Purchased Assets**" means the Debtor's assets that Silver Palate purchased pursuant to the Sale.

"**Purchase Price Amount**" means the Purchase Price Cash Amount plus the Royalties.

"**Purchase Price Cash Amount**" means $1,690,000.00.

"**Rejection Damages Claim**" means the Claim in favor of a counterparty to an Executory Contract that is rejected by the Debtors, but that is not an Administrative Claim.

"**Royalties**" means the royalties of 2% of net sales, as defined by GAAP, generated and received on each fiscal year period following the Closing Date, not to exceed $2,500,000 in the aggregate, that Silver Palate is to pay pursuant to the Royalty Agreement.

"**Royalty Agreement**" means the agreement entered into between the Debtor and Silver Palate for Silver Palate to pay the Royalties per the terms of the Sale.

"**Sale**" means the Debtor's sale of the Purchased Assets to Silver Palate.

"**Schedules**" means the Schedules of Assets and Liabilities and the Statements of Financial Affairs filed by the Debtor with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

"**Secured Claim**" means a Claim that is alleged to be secured, in whole or in part, (a) by a lien against an asset of the Debtor or the Estate; or (b) as a result of rights of setoff under section 553 of the Bankruptcy Code.

"**Silver Palate**" means Silver Palate Kitchens, Inc., the buyer of the Purchased Assets pursuant to the Asset Purchase Agreement.

"**Unsecured Claim**" means any alleged Claim against the Debtor that is not secured by (or to the extent not secured by) a valid, enforceable, and unavoidable lien against any asset of the Debtor or the Estate, including any deficiency claim, which does not enjoy any administrative or priority status under the Bankruptcy Code.

"**VNB**" means Valley National Bank, a secured creditor in this Bankruptcy Case.

"**VNB Secured Claims**" means the Secured Claims of Valley National Bank, to the extent Allowed, in the amount of $1,690,000.00 as reduced by such amounts as it has been paid on account of such claim.

"**Voting Deadline**" means the period established by the Bankruptcy Court within which Ballots may be cast on the Plan.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.1    Classification Generally. All Claims and Equity Interests, except Administrative Claims, Professional Claims, and Priority Tax Claims, are placed in Classes under this Plan. A Claim is classified within a Class only to the extent that the Claim qualifies under the description of that Class. A Claim which is properly includible in more than one Class is only entitled to inclusion within a particular Class to the extent that it qualifies under the description of such Class and shall be included within a different Class(es) to the extent that it qualifies under the description of such different Class(es).

2.2    Unclassified Claims. The following types of Claims are not classified under this Plan:

Administrative Claims
Professional Claims
Priority Tax Claims

7- Debtor's Chapter 11 Plan of Liquidation

2.3    Classified Claims and Equity Interests. The following types of Claims and Equity Interests are classified under this Plan as follows:

Class 1    VNB  Secured Claims
Class 2    Itria Secured Claims
Class 3    Celtic Bank Secured Claims
Class 4    General Unsecured Claims
Class 5    Insider Claims
Class 6    Equity Interests

**ARTICLE III**
**TREATMENT OF ADMINISTRATIVE, PROFESSIONAL, AND PRIORITY CLAIMS**

3.1    Treatment. Unless previously paid, each holder of an Allowed Administrative Claim shall receive in full satisfaction, settlement, release and discharge and in exchange for such Claim from the Estate, through the Liquidation Trustee from the Liquidation Trust Assets, cash payments equal to the Allowed amount of the Administrative Claim on the later of (a)(i) fifteen (15) Business Days after the Effective Date (or as soon as reasonably practicable thereafter);   (ii) fifteen (15) Business Days following the date such Claim is Allowed by Final Order; or (iii) on such date as distributions are made by the Liquidation Trust pursuant to the provisions of the Plan; or (b) such other less favorable treatment as may be agreed upon in writing by the Debtor or the Liquidation Trustee and such holder.

3.2    Non-Professional Fee Administrative Claims. Except (a) as otherwise set forth in this Article III; (b) Administrative Claims arising out of liabilities incurred by the Debtor in the ordinary course of business after the Petition Date and in accordance with the terms and conditions of the particular transaction which gives rise to the Claim which shall be Allowed without any further action by the holder of such Claim, except for submission of such Claim to the Liquidation Trustee; and (c) an Administrative Claim for U.S. Trustee Fees or Section 503(b)(9) Administrative Claims, each holder of an Administrative Claim shall be required to file and serve upon all parties required to receive notice, an application for allowance of such Administrative Claim on or before the Postconfirmation Bar Date or be forever barred and discharged from doing so. An Administrative Claim with respect to which an application has been properly and timely filed pursuant to this section shall be treated and paid as an Administrative Claim when allowed by a Final Order.

3.3    Professional Fee Claims. Each Professional whose retention has been approved by the Bankruptcy Court and who holds or asserts an Administrative Claim that is a Professional Fee Claim, and who has not previously filed and received a Final Order approving its final Fee Application, shall file and serve on all parties required to receive notice a final Fee Application on or before the Postconfirmation Bar Date.  The failure to timely File the Fee Application shall result in the Professional Fee Claim being forever barred and discharged.  A Professional Fee Claim shall be treated and paid as an Administrative Claim only to the extent allowed by Final Order. Any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim. Any retainer provided on account of a Professional Claim may be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis. Any Professional Claim based on payment under section 328 of the Bankruptcy Code by commission or contingency shall be allowed and paid as provided for in the retention order of the Bankruptcy Code, without need for the

filing of any application or other document with the Bankruptcy Court notwithstanding anything contained herein to the contrary.

3.4     Allowed Priority Tax Claims.  The Estate, through payments made by the Liquidation Trustee from the Liquidation Trust Assets, shall pay any Allowed Priority Tax Claims in full satisfaction, settlement, release, and discharge of, and in exchange for such Claims cash payments equal to the amount of the Allowed Priority Tax Claims on the later of (a)(i) within fifteen (15) Business Days after the Effective Date (or as soon as reasonably practical thereafter); (ii) fifteen (15) Business Days following the date such Claim is Allowed by Final Order; or (iii)  on such date as distributions are made by the Liquidation Trust pursuant to the provisions of the Plan; or (b) such other less favorable treatment as may be agreed upon in writing by the Debtor or the Liquidation Trustee and such holder.

3.5     U.S. Trustee Fees. The Estate, through payments made by the Liquidation Trustee from the Liquidation Assets, shall pay all unpaid U.S. Trustee Fees (if any) in cash on the later of (a) within fifteen (15) Business Days after the Effective Date (or as soon as reasonably practicable after such fees become due) or (b)   such date as distributions are made by the Liquidation Trust pursuant to the provisions of this Plan. The Liquidation Trustee shall pay postconfirmation U.S. Trustee Fees until the Debtor's Chapter 11 Case is converted, dismissed, or a Final Decree is issued, whichever occurs first.

**ARTICLE IV**
**TREATMENT AND VOTING OF CLASSIFIED CLAIMS AND EQUITY INTERESTS**

4.1     Classes. Claims and Equity Interests shall be treated as follows under this Plan:

| Class | Impairment | Claims Treatment |
|---|---|---|
| Class 1—VNB Secured Claims | Impaired | The VNB Secured Claims, to the extent Allowed, shall be paid from any distributions made by the Liquidation Trust pursuant to the provisions of Article VII of the Plan. VNB shall maintain its lien on all proceeds of the Sale, including the Royalties, until its Allowed Secured Claims are paid in full. |
| Class 2—Itria Secured Claims | Impaired | Itria's Secured Claims, to the extent Allowed, shall be paid from any distributions made by the Liquidation Trust pursuant to the provisions of Article VII of the Plan.  If Itria's Claims are determined to not be Secured, such Claims, if Allowed, shall be treated as Class 4 General Unsecured Claims. |
| Class 3—Celtic Bank Secured Claims | Impaired | Celtic's Secured Claims, to the extent Allowed, shall be paid from any distributions made by the Liquidation Trust pursuant to the provisions of Article VII of the Plan.  If Celtic Bank's Claims are determined to not be Secured, such Claims, if Allowed, shall be treated as Class 4 General Unsecured Claims. |

| | | |
|---|---|---|
| Class 4—General Unsecured Claims | Impaired | Each holder of an Allowed General Unsecured Claim, to the extent Allowed, shall receive a pro-rata share of any distributions made by the Liquidation Trust pursuant to the provisions of Article VII of the Plan. |
| Class 5—Insider Claims | Impaired | Each holder of an Insider Claim, to the extent Allowed, shall receive a pro-rata share of any distributions made by the Liquidation Trust pursuant to the provisions of Article VII of this Plan. |
| Class 6 – Equity Interests | Impaired | All Equity Interests shall be cancelled. Each holder of an Equity Interest, to the extent Allowed, shall receive a pro-rata share of any distributions made by the Liquidation Trust only after all other Allowed Claims are paid in full pursuant to the provisions of Article VII of this Plan. |

4.2     Classes Entitled to Vote and Vote Amount. The following holders of Claims in Classes 1-6 are entitled to vote to accept or reject the Plan: (a) all persons or entities identified in the Schedules as holding liquidated, noncontingent and undisputed Claims in an amount greater than zero dollars, excluding scheduled claims that have been paid in full or superseded by a filed Proof of Claim; (b) all parties having timely filed a Proof of Claim, as reflected in the official claims register (i) in an amount greater than zero dollars, (ii) that are not contingent, unliquidated or disputed, and (iii) that have not been disallowed or expunged; (c) the assignee of a transferred and assigned claim (whether a filed or scheduled claim) whose transfer and assignment has been properly noted on the Court's docket and is effective pursuant to Bankruptcy Rule 3001(e) as of the close of business on the Voting Record Date and whose claims have not been disallowed or expunged; (d) all holders of equity interests in the Debtor.

Each holder of a Claim within Class 1-6 entitled to vote shall be entitled to vote the amount of such Claim as set forth in the Schedules unless (a) such holder timely filed a Proof of Claim in which case the holder is entitled to vote the amount of such Claim as set forth in the Proof of Claim; or (b) the Debtor  has satisfied such Claim in which event the holder is entitled to vote only the unsatisfied portion of the Claim.  Notwithstanding the foregoing, if a Claim (a) is deemed "Allowed" under the Plan or an order of the Court, such Claim is Allowed for voting purposes in the deemed "Allowed" amount set forth in the Plan or the Court's order; (b) if a Claim is partially liquidated and partially unliquidated, the holder shall only be allowed to vote the Claim in the liquidated amount.

4.3     Acceptance by Impaired Classes of Claims. An Impaired Class of Claims shall have accepted this Plan if, disregarding the votes of any holder designated under Bankruptcy Code § 1126(e): (a) the holders of at least two-thirds in dollar amount of the Claims eligible and actually voting in such Class have voted to accept this Plan; and (b) the holders of more than one-half in number of the Claims eligible and actually voting in such Class have voted to accept this Plan.

**ARTICLE V**
**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

10- Debtor's Chapter 11 Plan of Liquidation

5.1 <u>Objection Deadline; Prosecution of Objections</u>. Except as otherwise provided herein, or in the Confirmation Order or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidation Trustee shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) any and all Claims that are not Allowed Claims. If he elects to do so, the Liquidation Trustee shall file objections to Claims no later than the Claim Objection Deadline and shall serve such objections upon the holders of each of the Claims to which objections are made. The Liquidation Trustee shall be authorized to resolve all Disputed Claims by withdrawing or settling such objections thereto, or by litigating to judgment in the Bankruptcy Court or such other court having competent jurisdiction the validity, nature, or amount thereof. Any Proofs of Claim that are filed after the applicable Bar Date, including amendments to existing Proofs of Claim, or applications for the allowance of an Administrative Claim that are filed after the Postconfirmation Bar Date shall be deemed invalid and not Allowed unless (a) consented to by the Liquidation Trustee or (b) authorized by the Bankruptcy Court. The Liquidation Trustee shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim immediately before the Effective Date.

5.2 <u>No Distribution Pending Allowance</u>. Notwithstanding any provision otherwise in this Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (b) any Person that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Claims have been Allowed or expunged. No Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed pursuant to the Plan or a Final Order, including the Confirmation Order (when it becomes a Final Order), allowing such Claim.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1 <u>Rejection of Executory Contracts and Unexpired Leases</u>. Except to the extent that: (a) the Debtor previously has assumed or rejected an executory contract or unexpired lease, (b) prior to the Effective Date, the Bankruptcy Court has entered an Order assuming an executory contract or unexpired lease, or (c) at the Confirmation Hearing the Bankruptcy Court approves the assumption of any executory contracts or unexpired leases, the Debtor's executory contracts and unexpired leases shall be deemed rejected on the Effective Date pursuant to Bankruptcy Code §§ 365 and 1123. Any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be filed with Bankruptcy Court and served on the Debtor and Liquidation Trustee on or before the Postconfirmation Bar Date. All Allowed Claims arising from the rejection of the Debtor's prepetition executory contracts or prepetition unexpired leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

## ARTICLE VII
## MEANS FOR IMPLEMENTING THE PLAN

11- Debtor's Chapter 11 Plan of Liquidation

7.1     Funding of the Plan.   This Plan will be funded with the Estate Assets, including the Debtor's cash on hand, and proceeds from the Sale, including the right to receive the Royalties, and the Causes of Action, if any.

7.2     Liquidation Trust.  This Plan creates a liquidation trust for the benefit of holders of Allowed Claims as follows:

7.2.1   Creation. On the Effective Date, and without need for further order, the Liquidation Trust shall be created and the Debtor shall be authorized to enter into the Liquidation Trust Agreement. The Liquidation Trust shall be a grantor trust under federal law and shall not have any liability to pay any income tax.

7.2.2   Vesting of Assets. On and after the Effective Date, the Liquidation Trust shall be vested with the Liquidation Trust Assets. All property and assets of the Estate transferred to and vested in the Liquidation Trust under this Plan shall be transferred free and clear of all liens, claims, interests, and encumbrances, except only for those liens, claims, interests, and encumbrances expressly and explicitly preserved or created under this Plan.

7.2.3   Beneficiaries. The beneficiaries of the Liquidation Trust shall be holders of Allowed Claims.

7.2.4   Trustee. The Liquidation Trust shall be solely and fully administered by the Liquidation Trustee subject to resignation and replacement as otherwise provided for in the Liquidation Trust Agreement. The Liquidation Trustee shall have the fiduciary duties of a trustee to the Liquidation Trust and, without further need for Bankruptcy Court approval (unless otherwise indicated), the Liquidation Trustee shall have the authority to carry out and implement all provisions of this Plan. The Liquidation Trustee shall have all of the rights, powers, and privileges set forth in this Plan, the Confirmation Order, and the Liquidation Trust Agreement. The Liquidation Trustee may take all such actions as it deems necessary and appropriate to effectuate the purposes of this Plan, including but not limited to the following: (a) make all distributions contemplated under this Plan; (b) enter into any agreement on behalf of the Liquidation Trust required by or consistent with this Plan and perform all of the obligations required of the Liquidation Trustee under the Liquidation Trust Agreement or this Plan; (c) abandon any assets of the Liquidation Trust if the Liquidation Trustee concludes that such assets are of no material benefit to the beneficiaries; (d) participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party, intervenor or otherwise in any legal proceeding, administrative proceeding or other non-judicial proceeding and litigate Claims, Causes of Action, counterclaims, defend the Liquidation Trust or otherwise act in any judicial proceeding on behalf of the Liquidation Trust, including without limitation all state and federal causes of action or any other litigation which constitute a Liquidation Trust Asset or otherwise benefits the Creditors and pursue to settlement or judgment such actions. The Liquidation Trustee shall have standing and may engage professionals to prosecute Causes of Action, including without limitation, Avoidance Actions, and otherwise represent the Liquidation Trust generally; (e) participate  as a party-in-interest in any proceeding before the Bankruptcy Court involving the Bankruptcy Case; (f) act in the name of or in the place of the Liquidation Trust or the Debtor in any action before the Bankruptcy Court or any other judicial or administrative body; (g) take actions and exercise remedies against any entity or Person that owes money to or has breached the rights of the Debtor, the Estate, or the Liquidation Trust, including the remedies

available under any deed of trust, security agreement, contract, promissory note, bond, guarantee, other legal or equitable right or other instrument or document; make compromises regarding any deed of trust, security agreement, promissory note, bond, guarantee, other legal or equitable right or other instrument or document; and, declare, negotiate or waive defaults regarding any deed of trust, security agreement, promissory note, bond, guarantee, other legal or equitable right or other instrument or document; (h) reach an agreement with the Debtor, its former employees, or their counsel to take specific action on behalf of the Liquidation Trust or the Debtor; (i) select and employ such professionals, consultants, agents or employees, whether or not formerly employed or engaged by the Debtor, as the Liquidation Trustee deems necessary to assist in the administration of the affairs of the Liquidation Trust and compensate such persons to whom the Liquidation Trustee may delegate actions, including (a) executing tax returns, corporate dissolution instruments or other documents on behalf of Debtor after the Effective Date, and (b) assisting the Liquidation Trustee with, without limitation, Claim objections or supporting Avoidance Claims or other Causes of Action; (j) propose, and if appropriate, take steps to obtain Bankruptcy Court approval, of any amendment, modification or supplement to this Plan or the Liquidation Trust Agreement, (k) file dissolution/termination documents with the appropriate governmental agencies to dissolve the Debtor; (l) receive, conserve and manage the Liquidation Trust Assets and sell, pursuant to Bankruptcy Code §§ 363(f) and 1123(a)(5) and the Plan, or otherwise dispose of such assets for a price and upon such terms and conditions as the Liquidation Trustee deems most beneficial to the Liquidation Trust Beneficiaries and execute such deeds, bills of sale, assignments and other instruments in connection therewith; (m) open and maintain bank accounts on behalf of or in the name of the Liquidation Trust; (n) pay all taxes, make all tax withholdings and file tax returns and tax information returns and make tax elections by and on behalf of the Liquidation Trust; (o) pay all lawful expenses, debts, and liabilities of the Liquidation Trust; (p) enforce all provisions of this Plan, Confirmation Order, and the Liquidation Trust Agreement; (q) protect, perfect and defend the title to any of the Liquidation Trust Assets and enforce any bonds, mortgages or other obligations or hens owned by the Liquidation Trust; (r) carry insurance coverage, including a defalcation bond or other insurance to protect the Liquidation Trust and the Liquidation Trustee against claims brought against the Liquidation Trust, and the Liquidation Trustee, acting within such capacities, in amounts as the Liquidation Trustee deems advisable; (s) establish such reserves for taxes, assessments and other expenses of administration of the Liquidation Trust (including, without limitation, the Disputed Claims Reserve and the Liquidation Trust Expense Reserve as defined in the Liquidation Trust Agreement) as in the Liquidation Trustee's judgment may be necessary and appropriate for the proper operation of matters incident to the affairs of the Liquidation Trust; (t) pursue claims or Causes of Action under any of the Debtor's current or past insurance policies, if any, in accordance with the terms of such policy; (u) stand in the Debtor's shoes with respect to, and have standing to pursue, all claims and Causes of Action (including without limitation Avoidance Actions) and collect all proceeds of any such Causes of Action on behalf of the Liquidation Trust, including without limitation proceeds of any insurance policy; (v) stand in the Debtor's shoes as the beneficiary of all applicable insurance policies of the Debtor; and (w) exercise such other powers and duties as are necessary or appropriate in the Liquidation Trustee's sole discretion to accomplish the purposes of this Plan.

      7.2.5 <u>Governance</u>. All governance and other matters regarding the Liquidation Trust shall be provided for in the Liquidation Trust Agreement.

13- Debtor's Chapter 11 Plan of Liquidation

7.2.6   <u>Distributions</u>. The Liquidation Trustee shall make distributions from the Liquidation Trust Assets from time to time and as soon as reasonably possible after the receipt of any Royalties as follows:

a.   First, to pay the Liquidation Trustee's fees and expenses then owed;

b.   Second, 25% to holders of Allowed Administrative, Professional and Priority Tax Claims and U.S. Trustee fees and 75% to Class 1—Allowed VNB Claims until paid in full;

c.   Third, if either the holders of Allowed Administrative, Professional and Priority Tax Claims and U.S. Trustee fees or the Class 1—Allowed VNB Secured Claims are paid in full, the other shall receive 100% until paid in full;

d.   Fourth, pro rata to  Class 2—Itria Secured Claims and Class 3—Celtic Bank Secured Claims, if Allowed, until paid in full;

e.   Fifth, pro rata to holders of  Allowed Class 4—General Unsecured Claims until paid in full;

f.   Sixth,  pro rata to holders of Allowed Class 5—Insider Claims until paid in full;

g.   Seventh, after all other Allowed Claims are paid in full, to holders of Allowed Equity Interests.

7.2.7   <u>Compensation</u>.  The Liquidation Trustee shall be entitled to compensation of up to $525.00 per hour, and the reimbursement of reasonable expenses, subject to adjustment and other provisions provided for in the Liquidation Trust Agreement.

7.2.8   <u>Liability; Indemnification</u>.  The Liquidation Trustee shall not be liable for any act or omission taken or omitted to be taken in his capacity as the Liquidation Trustee, other than acts or omissions resulting from the Liquidation Trustee's willful or reckless misconduct, gross negligence, or fraud. The Liquidation Trustee may, in connection with the performance of his functions, and in his sole and absolute discretion, consult with attorneys, accountants, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Liquidation Trustee shall be under no obligation to consult with his attorneys, accountants, or agents, and his determination to not do so should not result in imposition of liability on the Liquidation Trustee unless such determination is based on willful or reckless misconduct, gross negligence, or fraud.  The Liquidation Trust shall indemnify and hold harmless the Liquidation Trustee and her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to, attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidation Trust or the implementation or administration of this Plan; *provided, however*, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful or reckless misconduct, gross negligence, or fraud.

7.2.9   <u>Bankruptcy Court Jurisdiction</u>. The Bankruptcy Court shall have jurisdiction over all matters regarding the management of the Liquidation Trust and over the Liquidation

14- Debtor's Chapter 11 Plan of Liquidation

Trustee, and over such other matters affecting the Liquidation Trust and the liquidation of the Liquidation Trust Assets as is otherwise appropriate and as is provided for in this Plan, to the maximum extent possible. The Bankruptcy Court shall likewise have continuing jurisdiction to provide guidance, control, and oversight of the Liquidation Trust and the Liquidation Trustee, and the Liquidation Trustee shall have the ability, from time to time, to seek such guidance, control, oversight, and orders from the Bankruptcy Court regarding the Liquidation Trust and its administration as is otherwise appropriate.

7.3     Notices and Distributions.  All distributions shall be payable only to Liquidation Trust Beneficiaries of record as of the Distribution Record Date (as defined in the Liquidation Trust Agreement) and in amounts equal to such Liquidation Trust Beneficiary's pro rata portion of the distribution. All distributions shall be payable in cash by wire transfer, check or such other method as the Liquidation Trustee deems appropriate under the circumstances. Distributions may be made to Liquidation Trust Beneficiaries at any of the following addresses, in the Liquidation Trustee's sole discretion: (a) the address listed in the Proofs of Claim filed by such beneficiary; (b) the address listed for such beneficiary in the Debtor's Schedules; or (c) such address set forth in any written notice of address change filed with the Clerk of Court for the Bankruptcy Case prior to the Effective Date and, after such Effective Date, filed with the Clerk of Court and served on the Liquidation Trustee The Trustee is not obligated to make any effort to determine the correct address of any Liquidation Trust Beneficiary. If any holder's distribution is returned as undeliverable or is otherwise unclaimed, it will be treated in accordance the Liquidation Trust Agreement and this Plan.

7.4     Unclaimed Property. If any property to be distributed on account of this Plan remains unclaimed for a period of one (1) year after it has been delivered (or delivery has been attempted) or has otherwise been made available, such unclaimed property shall be forfeited by the Person entitled to receive the property and the unclaimed property and the right to receive it shall revert to and vest in the Liquidation Trust as appropriate.

7.5     Release of Liens. Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and, in the case of an Allowed Secured Claim, satisfaction in full of the Claim, all mortgages, deeds of trust, liens, pledges, or other security interests against any property of the Debtor's Estate shall be fully released, settled, and compromised, and the holder of such mortgages, deeds of trust, liens, pledges, or other security interest against any property of the Debtor's Estates shall be authorized to take such actions as may be reasonably requested by the Debtor to evidence such releases.

7.6     Cancellation of Notes, Instruments, Certificates, and Other Documents. On the Effective Date, except to the extent otherwise provided herein, all notes, instruments, certificates, and other documents evidencing Claims or Equity Interests shall be cancelled and the obligations of the Debtor thereunder or in any way related thereto shall be discharged; provided, however, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the holder of a Claim or Equity Interest shall continue in effect solely for purposes of allowing holders of Allowed Claims to receive distributions under this Plan.

7.7     Corporate Existence of Debtor. The Liquidation Trustee shall manage the Debtor after the Effective Date solely for the purpose of ensuring and effectuating its winding down, dissolution, termination, and filing and issuance of final tax returns and documents. The Liquidation Trustee shall take such steps under applicable nonbankruptcy law to wind down the affairs, dissolve, and to terminate the corporate existence of the Debtor, with this Plan satisfying all applicable nonbankruptcy law regarding the same, including all notice and other liquidation and wind down provisions and

15- Debtor's Chapter 11 Plan of Liquidation

procedures; provided, however, that during the existence of the Liquidation Trust, the Liquidation Trustee shall have the exclusive authority to file Debtor's tax returns, and issue final tax documents, including K-1s, as appropriate under applicable nonbankruptcy law evidencing the foregoing.

7.8    Retention and Preservation of Causes of Action. The Liquidation Trustee may pursue any claims or recovery actions held by the Debtor. Unless expressly and specifically released in this Plan or through any order entered in the Bankruptcy Case, all Causes of Action, assertible by the Debtor or the Estate, are reserved and preserved under this Plan and transfer to, and vest in, the Liquidation Trust as otherwise provided for in this Plan including any rights to or claims for indemnity.

7.9    Termination.  The Liquidation Trust shall continue to exist until the earlier of: (a) the fifth (5th) year anniversary of the Effective Date (as such date may be extended by Order of the Bankruptcy Court); and (b) the time the Liquidation Trustee has (i) administered all Liquidation Trust Assets and made a final distribution to holders of Allowed Claims in accordance with the terms of this Plan, Confirmation Order, and the Liquidation Trust Agreement and (ii) performed all other duties required by this Plan, Confirmation Order, and the Liquidation Trust Agreement (the "Liquidation Trust Termination Date"). Multiple extensions of the Liquidation Trust Termination Date may be obtained so long as Bankruptcy Court approval is obtained prior to the expiration of each extended term. As soon as reasonably practicable after the final distribution, the Liquidation Trustee shall dissolve the Liquidation Trust pursuant to the Liquidation Trust Agreement. Upon dissolution, the Liquidation Trustee's duties under the Liquidation Trust Agreement and this Plan shall terminate and the Liquidation Trustee shall be discharged.

7.10    Continuance of Liquidation Trust for Winding Up. After the termination of the Liquidation Trust and for the purpose of liquidating and winding up the affairs of the Liquidation Trust, the Liquidation Trustee shall continue to act as such until all of the Liquidation Trustee's duties under the Plan and this Liquidation Trust Agreement have been fully performed. Upon distribution of all of the Liquidation Trust Assets, or the proceeds thereof, the Liquidation Trustee shall hold the books, records and files delivered to or created by the Liquidation Trustee for a period of three (3) years after the final Distribution is made. All costs and expenses associated with the storage of such documents shall be paid by the Liquidation Trust. At the Liquidation Trustee's sole discretion, all such records and documents may be destroyed at any time after three (3) years from the distribution of all of the Liquidation Trust Assets. Except as otherwise specifically provided herein, upon the distribution of all of the Liquidation Trust Assets, the Liquidation Trustee shall have no further duties or obligations hereunder except (a) to account and report as provided in the Plan and this Liquidation Trust Agreement and (b) to perform such other acts as may be required by law.

7.11    Final Accounting. Upon termination of the Liquidation Trust, the Liquidation Trustee shall file an accounting with the Bankruptcy Court setting forth (a) the amount he has collected and disbursed and (b) the fees and expenses incurred in administering the Liquidation Trust, including the fees and expenses incurred by the Liquidation Trustee and any attorneys, accountants, advisors, or other professionals employed by the Liquidation Trustee or Liquidation Trust. The Liquidation Trustee shall seek, on twenty-one (21) days negative notice to those entitled to notice as provided for in the Liquidation Trust Agreement, the issuance and entry of any orders necessary (if any) to approve such accounting and discharge the Liquidation Trustee from further responsibilities together with any and all liability for acting as Liquidation Trustee under this Plan and the Liquidation Trust Agreement.

**ARTICLE VIII**

16- Debtor's Chapter 11 Plan of Liquidation

## **CONDITIONS PRECEDENT AND THE EFFECTIVE DATE**

8.1 <u>Conditions Precedent to Confirmation and Effectiveness of this Plan</u>. This Plan shall not become effective until the following conditions shall have been satisfied: (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtor; (b) on the fifteenth (15th) day after the Confirmation Date, no notice of appeal of the Confirmation Order shall have been filed or, if filed, no order staying the Confirmation Order shall have been entered by such date; (c) the Liquidation Trustee shall have negotiated and executed the Liquidation Trust Agreement; (d) all other specific condition precedents contained in this Plan shall have been satisfied, if any.

8.2 <u>Notice of Effective Date</u>. Promptly after the occurrence of the Effective Date, the Debtor shall file with the clerk of the Bankruptcy Court notice that the Plan has become effective, which the Debtor shall serve on all Persons served with a copy of the Disclosure Statement; *provided, however,* that the failure to file and serve such notice shall not affect the effectiveness of the Plan.

8.3 <u>Closing the Bankruptcy Case</u>. On or after the Effective Date, the Liquidation Trustee or the Debtor may move for a final decree closing the Bankruptcy Case and requesting such other orders as may be necessary and appropriate.

## **ARTICLE IX**
## **GENERAL PROVISIONS**

9.1 <u>Plan Documents</u>. On or before the Effective Date, the Debtor may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof. Any documents, forms, lists, agreements, and any exhibits or supplements to this Plan filed prior to the conclusion of the Confirmation Hearing shall automatically become part of this Plan as if set forth in full herein if it is contemplated by this Plan or is intended to address any issue in this Plan.

9.2 <u>Entire Agreement</u>. Except as otherwise indicated, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan. Each holder of a Claim or an Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtor or their counsel, or any other Person, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

9.3 <u>Plan Controls</u>. To the extent there is an inconsistency or ambiguity between any term or provision contained in the Disclosure Statement and the Plan, the terms and provisions of the Plan shall control.

9.4 <u>Governing Law</u>. Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal or state laws are applicable, or any prepetition contract provides for the application of the law of a different state, the laws of the State of Texas shall govern the construction, implementation and enforcement of this Plan and all rights and obligations arising under this Plan, without giving effect to the principles of conflicts of law.

9.5     Severability.  Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Person, the Debtor may, in its discretion, alter, delete, or modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision. Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect, provided that the Bankruptcy Court otherwise confirms the Plan.

9.6     Binding Effect.  Upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

9.7     Reservation of Rights. Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order. None of the filing of this Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to this Plan, or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the holders of Claims or Equity Interests prior to the Effective Date.

9.8     Successors and Assigns.  The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Person.

9.9     Interest Accrual.  Unless otherwise provided in this Plan, no postpetition interest shall accrue on any Claim or scheduled liability (including, but not limited to, Allowed Administrative Claims).

9.10    Additional Documents. The Debtor and all holders of Claims and Equity Interests receiving distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

9.11    Retention of Lien; Right to Prepay.  Any lien preserved or granted in this Plan shall, when permitted to be exercised by this Plan and applicable law, be exercised, enforced, and foreclosed in full and strict conformity with all applicable non-bankruptcy law and agreements, except to the extent specifically modified or preempted in this Plan.

9.12    No Admissions. Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein including, without limitation, liability of any person on any Claim or the propriety of any classification of any Claim.

9.13    Votes Solicited in Good Faith. Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy

18- Debtor's Chapter 11 Plan of Liquidation

Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and each of its agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code and, therefore, neither any of such parties or individuals or the Debtor will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

9.14    Election of Cram Down.   The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity Interests. The Debtor reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Equity Interests to render such Class of Claims or Equity Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

9.15    Waiver of Stay. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 6006(d), the Debtor shall be authorized to consummate this Plan and the transactions and transfers contemplated thereby immediately after entry of the Confirmation Order.

9.16    Modification of Plan.  Effective as of the date hereof, (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein; and (b) after the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

9.17    Revocation of Plan. The Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans.  If the Debtor revokes or withdraw this Plan or if entry of the Confirmation Order does not occur, or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Equity Interests; (b) prejudice in any manner the rights of the Debtor or any other Person or Entity; or (c) constitute an admission of any sort by the Debtor or any other Person or Entity.

9.18    No Stay of Confirmation Order. The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062

9.19    Automatic Stay. The automatic stay provided by section 362(a) of the Bankruptcy Code shall remain in effect through to the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to separate order, and shall terminate on the Effective Date, at which time the discharge and injunction provisions of this Plan and the Bankruptcy Code shall control.

**ARTICLE X**
**EFFECTS OF CONFIRMATION**

10.1    <u>No Discharge.</u>   The Debtor will not receive any discharge under this Plan.

10.2    <u>Plan Injunction</u>. Effective immediately on the Effective Date, and without need for further order, document, action, or instrument, the Confirmation Order shall, and shall be deemed to, permanently enjoin all Persons from taking any of the following actions on account of any Claim: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor or the Estate or any of its property, on account of a Claim or debt that is treated under this Plan, except solely as permitted under this Plan; (b) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor or the Estate or any of its property, on account of a Claim or debt that is treated under this Plan, except solely as permitted under this Plan; (c) creating, perfecting or enforcing in any manner directly or indirectly, any lien, charge or encumbrance of any kind against the Debtor or the Estate or any of its property, on account of a Claim, interest, lien, or debt that is treated under this Plan, except solely as permitted under this Plan; and (d) proceeding in any manner in any place whatsoever against the Debtor or the Estate or any of its property with respect to any property to be distributed or transferred under the Plan or Claim that is subject to this Plan, in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan; *provided*, *however*, that such injunction shall not preclude any party in interest from seeking to enforce or interpret the terms of this Plan through an action commenced in the Bankruptcy Court or other appropriate court, from appealing the Confirmation Order, or from filing a continuation statement to continue in effect a perfected security interest that survives the Effective Date.

10.3    <u>Exculpation</u>. Except as specifically provided for herein, on and after the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release and discharge of all actions, causes of action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that the Debtor or the Estate may have or be able to assert against: (a) any member of the board, officer, or manager of the Debtor; (b) Ross & Smith,  PC;  (c) White, Starling & Osterman, PLLC; (d) Anchin, Block & Anchin, LLP; and (e) Crescendo Strategic Advisors, LLC, and their  attorneys, employees, officers, agents, and shareholders solely for any actions or inactions taken by any of the foregoing in, or arising against the foregoing as a result of, the Bankruptcy Case, the Disclosure Statement, or this Plan, including with respect to the negotiation, execution, and delivery of any document or instrument in connection with the Plan; *provided, however,* that nothing in this Plan releases any claim against any of the foregoing for gross negligence or intentional act. For the avoidance of doubt, the foregoing does not affect or prejudice any claim or cause of action arising prior to the Petition Date.

**ARTICLE XI**
**<u>RETENTION OF JURISDICTION</u>**

11.1    <u>Retention of Jurisdiction.</u>   Notwithstanding confirmation of this Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction to the same extent the Bankruptcy Court had jurisdiction immediately prior to the confirmation of this Plan (and to the extent that the Bankruptcy Court subsequently acquires jurisdiction), including but not limited to, for the

20- Debtor's Chapter 11 Plan of Liquidation

purpose of interpreting or enforcing this Plan, any confirmation order, any other matter relating to or arising under title 11 as they relate to the Debtor or this Plan.

## CONFIRMATION REQUEST

The Debtor hereby requests confirmation of this Plan pursuant to section 1129(a) of the Bankruptcy Code or, if this Plan is not accepted by each of those Classes of Claims entitled to vote, section 1129(b) of the Bankruptcy Code.

Dated: May 31,  2025                    Respectfully submitted,

**ROSS & SMITH, PC**

By: ___/s/ *Frances A. Smith*_____
Frances A. Smith
State Bar No. 24033084
Jonathan Gitlin
State Bar No. 24064305
700 North Pearl Street, Suite 1610
Dallas, Texas 75201
Telephone: 214-377-7879
Facsimile: 214-377-9409
Email: frances.smith@ross-and-smith.com
Email: jonathan.gitlin@ross-and-smith.com

**COUNSEL TO DEBTOR**