Frances A. Smith
State Bar No. 24033084
Jonathan Gitlin
State Bar No. 24064305
Ross & Smith, PC
700 North Pearl Street, Suite 1610
Dallas, Texas 75201
Telephone: 214-377-7879
Facsimile: 214-377-9409
Email: frances.smith@ross-and-smith.com
Email: jonathan.gitlin@ross-and-smith.com

**COUNSEL TO DEBTOR**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 24-34058** |
| **Cucina Antica Foods, Corp.,** | § | |
| | § | |
| | § | **CHAPTER 11** |
| | § | |
| **Debtor.** | § | |

## SECOND AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125
## IN SUPPORT OF THE DEBTOR'S FIRST AMENDED
## CHAPTER 11 PLAN OF LIQUIDATION

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR ON YOUR DECISION TO ACCEPT OR REJECT A CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE DEBTOR. THE PLAN CONTAINS STRONG INJUNCTIONS THAT MAY PERMANENTLY AFFECT AND LIMIT YOUR RIGHTS. PLEASE READ THIS DISCLOSURE STATEMENT AND PLAN CAREFULLY**

## ARTICLE I
## INTRODUCTION

Cucina Antica Foods, Corp. (the "Debtor"), debtor-in-possession in the above-referenced Chapter 11 Case, submits this *Second Amended Disclosure Statement Under 11 U.S.C. § 1125 in Support of the Debtor's First Amended Chapter 11 Plan of Liquidation* (the "Disclosure Statement"). A copy of the *Debtor's First Amended Chapter 11 Plan of Liquidation* (the "Plan") is attached as Exhibit A to this Disclosure Statement. Unless otherwise defined herein, capitalized terms used herein shall have the meaning ascribed to them in Article I of the Plan.

This Disclosure Statement is provided to all of the Debtor's creditors and other parties in interest entitled to it under the Bankruptcy Code. This Disclosure Statement sets forth certain relevant information regarding the Debtor's history, its need to seek Chapter 11 protection, significant events that have occurred during the Chapter 11 Case, a discussion of the expected return to the Debtor's

creditors and the anticipated procedures for satisfying Claims. This Disclosure Statement also describes terms and provisions of the Plan, including certain alternatives to the Plan, certain risk factors associated with the Plan, and the manner in which distributions will be made under the Plan. Additionally, this Disclosure Statement discusses the confirmation process and the voting procedures that holders of Claims must follow for their votes to be counted.

### A. Filing of the Debtor's Chapter 11 Case

The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division on December 13, 2024. Since that time, the Debtor has continued to manage and operate its affairs as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

### B. Summary of Treatment of Claims and Interests and Distributions Under the Plan

The Plan separates Claims and Equity Interests against the Debtor, the Estate, and its property into unclassified Claims and classified Claims. Creditors vote on the Plan by their respective Class. Unclassified Claims are generally postpetition Claims which must be paid in full and which do not vote on the Plan, and consist of Administrative Claims, including Professional Fees, and Priority Tax Claims.

The Plan provides for the creation of a Liquidation Trust and for the Estate Assets to be transferred to the Liquidation Trust to be distributed to Creditors in satisfaction of Allowed Claims. All Allowed Claims will be paid from distributions made from the Liquidation Trust, with the Administrative, Professional, and Priority Tax Claims and the VNB Secured Claims having priority and any other Allowed Secured Claims being paid next. Holders of Allowed General Unsecured Claims shall receive a pro-rata share of any distributions from the Liquidation Trust to be paid only after Allowed Administrative, Professional, Priority Tax, and Secured Claims are paid in full. Insider Claims shall also receive a pro-rata share of any distribution from the Liquidation Trust to be paid only after Allowed General Unsecured Claims are paid in full. Equity Interests will be cancelled, and holders shall receive a pro-rata share of any distribution from the Liquidation Trust to be paid only after all other Allowed Claims are paid in full.

Below is a summary of the Classified Claims and the Plan's proposed treatment of such claims.

| Class | Impairment | Claims Treatment |
| --- | --- | --- |
| Class 1—VNB Secured Claims | Impaired | VNB received $1,438,891.45 from the Sale proceeds and shall be paid the remaining amount of its Allowed Secured Claims from any distributions made by the Liquidation Trust pursuant to the provisions of Article VII of the Plan. VNB shall maintain its lien on all proceeds of the Sale, including the Royalties, until its Allowed Secured Claims are paid in full. |
| Class 2— Itria Secured Claims | Impaired | Itria's Secured Claims, to the extent Allowed, shall be paid from any distributions made by the Liquidation Trust pursuant to the provisions of Article VII of the Plan. If Itria's Claims are |

2- Second Amended Disclosure Statement in Support of First Amended Chapter 11 Plan of Liquidation

| | | determined to not be Secured, such Claims shall be treated as Class 4 General Unsecured Claims. |
|---|---|---|
| Class 3—Celtic Bank Secured Claims | Impaired | Celtic's Secured Claims, to the extent Allowed, shall be paid from any distributions made by the Liquidation Trust pursuant to the provisions of Article VII of the Plan. If Celtic Bank's Claims are determined to not be Secured, such Claims shall be treated as Class 4 General Unsecured Claims. |
| Class 4—General Unsecured Claims | Impaired | Each holder of an Allowed General Unsecured Claim, to the extent Allowed, shall receive a pro-rata share of any distributions made by the Liquidation Trust pursuant to the provisions of Article VII of the Plan. |
| Class 5—Insider Claims | Impaired | Each holder of an Insider Claim, to the extent Allowed, shall receive a pro-rata share of any distributions made by the Liquidation Trust pursuant to the provisions of Article VII of the Plan. |
| Class 6—Equity Interests | Impaired | All Equity Interests shall be cancelled. Each holder of an Equity Interest, to the extent Allowed, shall receive a pro-rata share of any distributions made by the Liquidation Trust only after all other Allowed Claims are paid in full pursuant to the provisions of Article VII of the Plan. |

## C.  Purpose of Disclosure Statement

Bankruptcy Code § 1125 requires the Debtor to prepare and obtain Bankruptcy Court approval of a Disclosure Statement as a prerequisite to soliciting votes on the Debtor's Plan. The purpose of the Disclosure Statement is to provide adequate information, meaning information of a kind, in sufficient detail, that would enable a hypothetical reasonable investor typical of holders of Claims or Equity Interests of the relevant Class to make an informed judgment about the Plan and make a decision to vote to accept or reject the Plan.

**YOU ARE ENCOURAGED TO READ THE PLAN, THIS DISCLOSURE STATEMENT AND EXHIBITS THERETO IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN.  PRIOR TO ITS DISTRIBUTION TO ALL CREDITORS AND OTHER PARTIES IN INTEREST, THIS DISCLOSURE STATEMENT WAS APPROVED BY THE COURT AS CONTAINING ADEQUATE INFORMATION; HOWEVER, COURT APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT IMPLY COURT APPROVAL OF THE PLAN.**

## D.  Confirmation Hearing

The Bankruptcy Court has set September 15, 2025 at 1:30 p.m. prevailing Central Time (the "Confirmation Hearing") as the time and date for the hearing to consider whether the Plan has been accepted by the requisite number of votes, and whether the other standards for confirmation of the

Plan have been satisfied. Once commenced, the Confirmation Hearing may be adjourned or continued by announcement in open court with no further notice.

### E.  Disclaimers

**APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN. THE MATERIAL CONTAINED HEREIN IS INTENDED SOLELY FOR THE USE OF CREDITORS OF THE DEBTOR IN EVALUATING THE PLAN AND VOTING TO ACCEPT OR REJECT THE PLAN AND, ACCORDINGLY, MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN THE DETERMINATION OF HOW TO VOTE ON, OR WHETHER TO OBJECT TO, THE PLAN.**

**THE DEBTOR BELIEVES THAT THE PLAN AND THE TREATMENT OF CLAIMS THEREUNDER IS IN THE BEST INTERESTS OF CLAIM HOLDERS AND URGES THAT YOU VOTE TO ACCEPT THE PLAN. THE PLAN SHOULD BE REVIEWED CAREFULLY.**

## ARTICLE II
## EXPLANATION OF CHAPTER 11

### A.  Overview of Chapter 11 and Voting on the Plan of Reorganization

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor-in-possession may seek to reorganize its affairs for the benefit of the debtor's creditors and other interested parties.  The commencement of a Chapter 11 case creates an estate comprising all of the debtor's legal and equitable interests in property as of the date the petition is filed. Unless the bankruptcy court orders the appointment of a trustee, a Chapter 11 debtor may continue to manage and operate its affairs as a "debtor-in-possession," as the Debtor has done since the Petition Date.

Formulation of a plan of reorganization is the principal purpose of a Chapter 11 case. The plan sets forth the means for satisfying the claims of creditors against the debtor.  After a plan is filed, the holders of claims are generally permitted to vote to either accept or reject the plan. Chapter 11 does not require that each holder of a claim votes in favor of a plan in order for the plan to be confirmed. At a minimum, however, a plan must be accepted by a majority in number and two-thirds (2/3) in amount of those claims actually voting from at least one class of claims impaired under the plan.

Classes of claims or interests that are not impaired under a plan of reorganization are conclusively presumed to have accepted the plan and therefore are not entitled to vote. A class is "impaired" if the plan modifies the legal, equitable, or contractual rights attaching to the claims or interests of that class.

**ARTICLE III**
**VOTING PROCEDURES AND CONFIRMATION REQUIREMENTS**

### A.  Ballots and Voting Deadline

A ballot for voting to accept or reject the Plan is enclosed with this Disclosure Statement and has been mailed to Creditors (or their authorized representatives) entitled to vote. After carefully reviewing the Disclosure Statement, including all exhibits, each Creditor (or its authorized representative) entitled to vote should indicate its vote on the enclosed Ballot. All Creditors (or their authorized representatives) entitled to vote must (i) carefully review the Ballot and instructions thereon, (ii) execute the Ballot, and (iii) return it to the address indicated on the Ballot **so as to be received no later than September 8, 2025, at 5:00 p.m. prevailing Central Time** (the "Voting Deadline") for the Ballot to be considered.

FOR YOUR VOTE TO BE COUNTED, YOUR VOTE MUST BE RECEIVED BY THE VOTING DEADLINE AT THE ADDRESS SET FORTH BELOW.

---

**By email, first class mail, overnight courier, or hand delivery to:**

**Michael Coulombe, Paralegal**
**Balloting Agent**
**Ross & Smith, PC**
700 North Pearl Street, Suite 1610
Dallas, Texas 75201
Michael.coulombe@ross-and-smith.com

---

**YOU ARE NOT REQUIRED TO VOTE, BUT ONLY THOSE VOTES ACTUALLY RECEIVED BY THE DEBTOR'S COUNSEL ON OR BEFORE THE VOTING DEADLINE WILL BE COUNTED, EITHER FOR OR AGAINST THE PLAN. ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED. ANY BALLOT THAT IS EXECUTED AND RETURNED BUT WHICH DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN OR INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN WILL NOT BE COUNTED. THE FAILURE TO VOTE DOES NOT CONSTITUTE A VOTE TO ACCEPT OR REJECT THE PLAN. AN OBJECTION TO THE CONFIRMATION OF THE PLAN, EVEN IF TIMELY SERVED, DOES NOT CONSTITUTE A VOTE TO ACCEPT OR REJECT THE PLAN.**

### B.  Holders of Classes Impaired and Voting

Holders of Claims in Classes 1-6 are Impaired and eligible to vote on the Plan as described in this Disclosure Statement.

#### 1.  Eligibility to Vote

The following holders of Claims in Classes 1-6 are entitled to vote to accept or reject the Plan: (a) all persons or entities identified in the Schedules as holding liquidated, noncontingent and

undisputed Claims in an amount greater than zero dollars, excluding scheduled claims that have been paid in full or superseded by a filed Proof of Claim; (b) all parties having timely filed a Proof of Claim, as reflected in the official claims register (i) in an amount greater than zero dollars, (ii) that are not contingent, unliquidated or disputed, and (iii) that have not been disallowed or expunged; (c) the assignee of a transferred and assigned claim (whether a filed or scheduled claim) whose transfer and assignment has been properly noted on the Court's docket and is effective pursuant to Bankruptcy Rule 3001(e) as of the close of business on the Voting Record Date and whose claims have not been disallowed or expunged; (d) all holders of equity interests in the Debtor.

### 2. Amount of Vote

Each holder of a Claim within a Class entitled to vote shall be entitled to vote the amount of such Claim as set forth in the Schedules unless (a) such holder timely filed a Proof of Claim in which case the holder is entitled to vote the amount of such Claim as set forth in the Proof of Claim; or (b) the Debtor has satisfied such Claim in which event the holder is entitled to vote only the unsatisfied portion of the Claim.

Notwithstanding the foregoing, if a Claim (a) is deemed "Allowed" under the Plan or an order of the Court, such Claim is Allowed for voting purposes in the deemed "Allowed" amount set forth in the Plan or the Court's order; (b) if a Claim is partially liquidated and partially unliquidated, the holder shall only be allowed to vote the Claim in the liquidated amount.

**A HOLDER OF A CLAIM DOES NOT HAVE AN "ALLOWED" CLAIM MERELY BECAUSE SUCH HOLDER IS ALLOWED TO VOTE ON THE PLAN. THE DEBTOR RESERVES THE RIGHT TO OBJECT TO ANY CLAIM (OR THE LIQUIDATION TRUSTEE TO OBJECT) EXCEPT FOR THOSE CLAIMS EXPRESSLY ALLOWED BY THE PLAN OR COURT ORDER.**

### C. Confirmation of the Plan of Reorganization

### 1. Solicitation of Votes Accepting the Plan

The Debtor is soliciting your vote in favor of the Plan. The Estate will bear the cost of any solicitation by the Debtor. No other additional compensation shall be received by any party for any solicitation other than as disclosed to the Bankruptcy Court.

No representations concerning the Plan are authorized by the Debtor other than those set forth in this Disclosure Statement. The information contained in this Disclosure Statement has been provided by the Debtor. In reaching your decision on how to vote on the Plan, the Debtor recommends that you not rely on any representation or inducement made to secure your acceptance or rejection of the Plan that is not in this Disclosure Statement or in the Plan itself.

Certain information included in this Disclosure Statement and its exhibits contain forward-looking statements. Such forward-looking statements are based on information available when such statements are made and deals with future results, the occurrence of which involves risks and uncertainties that could cause actual results to differ materially from those expressed in the statements.

### 2. Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of Bankruptcy Code § 1129 have been satisfied, in which event the Bankruptcy Court shall enter an order confirming the Plan. For the Plan to be confirmed, Bankruptcy Code § 1129 requires that:

a.  The Plan comply with the applicable provisions of the Bankruptcy Code;

b.  The Debtor has complied with the applicable provisions of the Bankruptcy Code;

c.  The Plan has been proposed in good faith and not by any means forbidden by law;

d.  Any payment or distribution made or promised by the Debtor or by a person issuing securities or acquiring property under the Plan for services or for costs and expenses in connection with the Plan has been disclosed to the Bankruptcy Court, and any such payment made before the Confirmation of the Plan is reasonable, or if such payment is to be fixed after Confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

e.  The Debtor has disclosed the identity and affiliation of any individual proposed to serve, after Confirmation of the Plan, as a director, officer or voting trustee of the Debtor, or a successor to the Debtor under the Plan; the appointment to, or continuance in, such office of such individual is consistent with the interests of Creditors and with public policy; and the Debtor has disclosed the identity of any insider that will be employed or retained by the Liquidation Trustee after confirmation and the nature of any compensation for such insider;

f.  Any government regulatory commission with jurisdiction (after confirmation of the Plan) over the rates of the Debtor has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval;

g.  With respect to each Impaired Class of Claims, either each holder of a Claim of the Class has accepted the Plan, or will receive or retain under the Plan on account of that Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code. If Bankruptcy Code § 1111(b)(2) applies to the Claims of a Class, each holder of a Claim of that Class will receive or retain under the Plan on account of that Claim property of a value, as of the Effective Date, that is not less than the value of that holder's interest in the Debtor's interest in the property that secures that Claim;

h.  Each Class of Claims has either accepted the Plan or is not Impaired under the Plan;

i.  Except to the extent that the holder of a particular Administrative Claim or Priority Claim has agreed to a different treatment of its Claim, the Plan provides that Administrative Claims or Priority Claims shall be paid in full on the Effective Date or the Allowance Date;

j.  If a Class of Claims or Equity Interests is Impaired under the Plan, at least one such Class of Claims or Equity Interests has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim or Equity Interest of that Class; and

k.  Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

### 3. Acceptances Necessary to Confirm the Plan

Voting on the Plan by each Creditor (or its authorized representative) is important. Chapter 11 of the Bankruptcy Code does not require that each Creditor vote in favor of the Plan in order for the Bankruptcy Court to confirm the Plan. Generally, to be confirmed under the acceptance provisions of Bankruptcy Code § 1126(a), the Plan must be accepted by each Class of Claims that is Impaired

under the Plan by parties holding at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class actually voting in connection with the Plan. Even if all Classes accept the Plan, the Bankruptcy Court may refuse to confirm the Plan.

**4. Cramdown**

The Debtor has requested the Bankruptcy Court confirm the Plan even if fewer than all Classes of Impaired Creditors vote to accept it. This type of confirmation over the objection of Creditors, commonly known as a "cramdown," can only occur if the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable." A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims or interests. "Fair and equitable" has different meanings for holders of secured and unsecured claims and interests.

With respect to a secured claim, "fair and equitable" means either (i) the impaired secured creditor retains its liens to the extent of its allowed claim and receives deferred cash payments at least equal to the allowed amount of its claims with a present value as of the effective date of the plan at least equal to the value of such creditor's interest in the property securing its liens, (ii) property subject to the lien of the impaired secured creditor is sold free and clear of that lien, with that lien attaching to the proceeds of sale, and such lien proceeds must be treated in accordance with clauses (i) and (iii) hereof; or (iii) the impaired secured creditor realizes the "indubitable equivalent" of its claim under the plan.

With respect to an unsecured claim, "fair and equitable" means either (i) each impaired creditor receives or retains property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

In the event at least one Class of Impaired Claims rejects or is deemed to have rejected the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting Impaired Class of Claims. The Debtor believes that the Plan does not discriminate unfairly and is fair and equitable with respect to each Impaired Class of Claims.

**ARTICLE IV**
**DEBTOR'S BACKGROUND AND ITS BANKRUPTCY FILING**

**A. Nature of the Debtor's Business**

The Debtor is a family business that produced and sold high-quality, Italian tomatoes, pasta sauces, and other Italian food products. The Debtor was founded by Chef Aniello Fusco ("Neil"), who was the Debtor's sole shareholder, President, and Secretary. Neil grew up on a small farm in Southern Italy, immigrated to New York, worked in the food industry as a restaurant owner and chef, and then founded the Debtor on July 8, 1998, in Westchester, New York. The Debtor's main office is in Dallas, Texas and it has some back-office operations in New York. The Debtor sells its products in numerous grocery store chains throughout the United States including Whole Foods, Inc., Sprouts Farmers Market, Inc., Natural Grocers by Vitamin Cottage, Inc., and Albertson's.

### B. Events Precipitating the Chapter 11 Filing

Before the bankruptcy filing, the Debtor was facing diminishing profits and liquidity challenges due to rising production costs and shipping costs in the post-COVID world coupled with some retail contracts that capped the Debtor's ability to raise its prices to cover increased costs. Despite these challenges, the Debtor produced a high-quality product that was in demand and enjoyed prominent shelf placement in major retail outlets.  Unfortunately, Neil became ill with cancer and determined that selling the Debtor would be in the best interest of the company.

On September 11, 2024, Neil passed away from complications of cancer, leaving his wife, Suzanne Fusco ("Suzanne"), and his daughter.  Neil left a valid written will (the "Will") appointing Suzanne as the Independent Executrix of the Will, and the recipient of his Remaining Property (as defined in the Will), which includes 100% of the shares in the Debtor, making Suzanne its sole shareholder.

Since Neil's passing, Suzanne has been running the company along with other members of the Fusco family.  Suzanne's main goal was to continue to operate the company to preserve its value until a sale could be consummated.  She worked with lenders and vendors to keep products moving into retail outlets and on the shelves.  In October and November 2024, the Debtor determined that its best course of action going forward would be to a sale through a Chapter 11 bankruptcy.

### C. The Debtor's Bankruptcy Filing and Significant Post Petition Developments

On December 13, 2024, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. Since that time, the Debtor has continued to manage and operate its affairs as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

#### 1. First Meeting of Creditors

The Debtor's first meeting of creditors required by Bankruptcy Code § 341 was held on January 22, 2025.

#### 2. Schedules and Statement of Financial Affairs

The Debtor filed its Schedules and on  January 10, 2025 and filed Amended Schedules E-F on March 28, 2025 (Docket Nos. 31, 32 and 87).  The Schedules are available electronically on the Public Access to Court Electronic Records ("PACER") website at https://www.pacer.gov/pcl.html. Creditors may also contact Debtor's counsel to obtain a copy of the Schedules.

#### 3. Bar Dates for Filing Proofs of Claim

The Bankruptcy Court established April 22, 2025, as the deadline for nongovernmental entities to file Proofs of Claim against the Debtor, and 180 days after the Petition Date as the deadline for governmental entities to file Proofs of Claim. With respect to a Claim for damages arising from the rejection of an executory contract or unexpired lease, the deadline for filing Proofs of Claim is thirty (30) calendar days after entry of an Order approving the rejection of such executory contract or unexpired lease or such other date as the Bankruptcy Court may fix by Order. The Plan provides for the rejection of certain executory contracts and unexpired leases. For any Claims for rejection of an

9- Second Amended Disclosure Statement in Support of First Amended Chapter 11 Plan of Liquidation

unexpired contract or unexpired lease that arise as a result of the Plan, such Claims shall be filed by the Postconfirmation Bar Date which is the first Business Day thirty (30) calendar days after the Effective Date.

### 4. Retention of Professionals

The Bankruptcy Court approved the Debtor's retention of the following professionals pursuant to § 327 of the Bankruptcy Code (collectively, the "Approved Professionals"):

a. Ross & Smith, PC as Debtor's bankruptcy counsel (Docket No. 52);
b. White, Starling & Osterman, PLLC as the Debtor's special counsel (Docket No. 53);
c. Anchin, Block & Anchin, LLP as the Debtor's accountants (Docket No 95); and
d. Crescendo Strategic Advisors, LLC as the Debtor's financial advisor (Docket No. 66).

### 5. Sale of Assets

On February 7, 2025, the Bankruptcy Court entered its *Order Approving Debtor's Emergency Motion to Sell Substantially All Assets Free and Clear of Liens, Claims and Encumbrances Under 11 U.S.C. 363* (the "Sale Order")(Docket. No. 74) approving the Debtor's sale of substantially all of its assets to Silver Palate Kitchens, Inc. ("Silver Palate") for $1,600,000 cash, plus royalties on the sale of certain products equal to 2% of net sales, as defined by GAAP, in the aggregate amount of $2,500,000 as further described in the Royalty Agreement (the "Royalties). Silver Palate is to pay the Royalties in arrears based on net sales associated with the products in the preceding fiscal year. Silver Palate's current fiscal year ends on December 31, 2025. Silver Palate shall make the Royalties payment no more than thirty (30) days following the completion of its annual financial statements.

The Sale closed on February 19, 2025 (the "Closing Date") and the cash proceeds, consistent with the Sale Order, were allocated as follows:

| | |
|---|---|
| Commission – Crescendo Strategic Advisors LLC | $136,000 |
| Personal Property Tax – Prorated for 2025 | $18.55 |
| To Debtor-in-Possession for payment of Administrative Expenses | $25,000 |
| Valley National Bank | $1,438,981.45 |

Certain assets were excluded from the Sale including the Seller's cell phones, phone number, AT&T account, AMEX loyalty and/or reward points, computer servers and information thereon, Seller's email address, computers, certain intellectual property, and certain physical assets located in Seller's offices (the "Excluded Assets").

A copy of the Asset Purchase Agreement (with includes a list of assets excluded from the Sale) and Royalty Agreement are attached hereto as Exhibits B and C.

### 6. Claims Against the Debtor

The Debtor has used its best efforts to ascertain and report all Claims against it.

Debtor's Schedules: The Debtor disclosed in its Schedules Creditors believed to potentially hold Secured Claims (Schedule D) in the aggregate amount of $2,202,610 and Creditors believed to potentially hold Unsecured nonpriority Claims (Schedule F) in the aggregate amount of $2,466,453.23.

On its Schedule D (Secured Claims), the Debtor listed the following five (5) claimants with potential Secured Claims: Biz2Credit Inc.; Celtic Bank; CSC; First Corporate Solutions Inc.; and VNB. Of these, the Debtor listed Biz2Credit Inc. and Celtic Bank as holding contingent, unliquidated or disputed Secured Claims and CSC and First Corporate Solutions Inc. as holding Secured Claims in an unknown amount. The Debtor believes (a) that the Secured Claims it listed in its Schedules for Biz2Credit Inc. and CSC are related to the Proof of Claim filed by Itria described below and included in Class 2, and (b) that the Secured Claims it listed in its Schedules for First Corporate Solutions Inc. and Celtic Bank arise out of the same debt and are included in Class 3.

Proofs of Claims:   Eighteen (18) Proofs of Claim were filed against the Debtor in the aggregate amount of $4,174,459.67.[1] Included in the Proofs of Claim are (a) a Secured Claim filed by VNB in the amount of $1,690,000; (b) a Secured Claim filed by Itria in the amount of $433,230.85 (the "Itria Claim"); (c) a priority claim filed by the IRS in the amount of $400 on account of the Debtor's estimated 2024 tax liability; and (d) Proofs of Claim filed as unsecured non-priority claims in a combined amount of $2,050,828.82.

Below is a summary of the Plan's treatment of Secured Claims.

| CLAIMANT | BASIS FOR PLAN TREATMENT | TREATMENT |
|---|---|---|
| VNB | Proof of Claim filed; Scheduled Claim | Class 1 |
| Itria/Biz2Credit Inc./CSC | Proof of Claim filed by Itria<br><br>Scheduled Biz2Credit as Disputed and Unliquidated/no Proof of Claim filed<br><br>Scheduled CSC in an Unknown amount /no Proof of Claim filed<br><br>Itria's filed Proof of Claim encompasses/includes the Scheduled Claims for Biz2Credit and CSC. | Class 2 |
| Celtic Bank/Bluevine/First Corporate Solutions Inc. | Celtic: Scheduled as Disputed; No Proof of Claim filed<br><br>FCS: Scheduled in an Unknown amount; No Proof of Claim filed | Class 3 |

---

[1] This amount includes a Proof of Claim filed by Di Vita S.p.A.in the amount of $518,309.26. The Claims Register listed the claim in an unknown amount, but a claim amount of $518,309.26 was included in an addendum to the proof of Claim.

The Debtor further believes that some of the scheduled Claims and Claims evidenced by a Proof of Claim are duplicative or have been resolved such that the final amount of Allowed Claims will be less than the amount of Claims it Scheduled and Proofs of Claims filed.

The Debtor had scheduled claims of $4,669,062.27 and the claims register reflects filed claims of $4,174,459.67of which $2,123,230.85 are secured leaving $2,051,228.82 as general unsecured secured claims. Those totals include VNB's secured claim of $1,690,000.00, which was partially satisfied by payment to the Asset Purchase Agreement leaving the bank a remaining claim of approximately $300,000.00. The Royalty Agreement provides for 2% of net sales to go to the Debtor until an aggregate of $2,500,000 is paid. If the Debtor or Liquidation Trust receives the full $2,500,000, and the Itria Claim is determined to be Secured, after payment of the secured and administrative expense claims, the estimated return to unsecured creditors will be $1,266,769.15 or approximately 61.76%.  If the Itria Claim is found to be Unsecured, after payment of the secured and administrative expense claims, the estimated return to general unsecured creditors is $1,700,000.00 or 68.43%.

**PURSUANT TO THE PLAN, UNLESS OTHERWISE PROVIDED FOR IN THE PLAN, THE LIQUIDATION TRUSTEE MAY OBJECT TO ANY CLAIM LISTED ON THE DEBTOR'S SCHEDULES, ANY PROOFS OF CLAIM, AS WELL AS ALL OTHER CLAIMS SUBSEQUENTLY FILED, UP TO AND THROUGH THE CLAIMS OBJECTION DEADLINE. THE DEBTOR RESERVES ALL RIGHTS WITH RESPECT TO OBJECTING TO ANY CLAIM.**

The Debtor sold substantially all of its assets in the Sale. The Debtor's remaining assets consist of the Excluded Assets, the right to receive the Royalties, cash on hand, and the Causes of Action, including Avoidance Actions. *These Estate Assets will be transferred to the Liquidation Trust to pay Allowed Claims.*

**ARTICLE V**
**<u>DESCRIPTION OF THE PLAN</u>**

### A.  Introduction

A summary of the principal provisions of the Plan and the treatment of Classes of Allowed Claims and Equity Interests is set out below. This Disclosure Statement is only a summary of the terms of the Plan and is entirely qualified by the Plan; it is the Plan and not the Disclosure Statement that governs the rights and obligations of the parties. The Plan seeks to make Distributions to Creditors according to the priority scheme established by the Bankruptcy Code.

### B.  Identification of Claims and Equity Interests

The following is a designation of the Classes of Claims and Equity Interests under the Plan. Pursuant to Bankruptcy Code § 1122, a Claim or Equity Interest is placed in a particular Class for purposes of voting on the Plan and receiving distributions under the Plan only to the extent:  (i) the Claim or Equity Interest qualifies within the description of that Class; (ii) the Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class; and (iii) the Claim or Equity Interest has not been paid, released, or otherwise compromised before the Effective Date. In accordance with

Bankruptcy Code § 1123(a)(1), all Claims and Equity Interests except Allowed Administrative Claims (including Professional Fees), Priority Tax Claims, and U.S. Trustee fees are classified in the Classes set forth below.

| | |
|---|---|
| Class 1 | VNB Secured Claims |
| Class 2 | Itria Secured Claims |
| Class 3 | Celtic Bank Secured Claims |
| Class 4 | General Unsecured Claims |
| Class 5 | Insider Claims |
| Class 6 | Equity Interests |

### C.  Treatment of Unclassified Claims

The Bankruptcy Code does not require classification of certain priority claims against a debtor. Administrative Claims and Priority Tax Claims shall not be classified for purposes of voting and shall be treated separately as unclassified claims and treated as set forth in the Plan.

### 1.  Allowed Administrative Claims

Administrative Claims are Claims for costs and expenses of administration under §§ 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code and include (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and managing the Debtor's affairs; (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under §§ 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under chapter 123 of Title 28 United States Code, 28 U.S.C. §§ 1911-1930.

(a) Treatment. Unless previously paid, each holder of an Allowed Administrative Claim shall receive in full satisfaction, settlement, release and discharge and in exchange for such Claim from the Estate, through the Liquidation Trustee from the Liquidation Trust Assets, cash payments equal to the Allowed amount of the Administrative Claim on the later of (a)(i) fifteen (15) Business Days after the Effective Date (or as soon as reasonably practicable thereafter),  (ii) fifteen (15)  Business Days following the date such Claim is Allowed by Final Order; or (iii)  on such date as distributions are made by the Liquidation Trust pursuant to the provisions of the Plan; or (b) such other less favorable treatment as may be agreed upon in writing by the Debtor or the Liquidation Trustee and such holder.

(b) Non-Professional Administrative Claims. Except (a) as otherwise set forth in Article III of the Plan; (b) Administrative Claims arising out of liabilities incurred by the Debtor in the ordinary course of business after the Petition Date and in accordance with the terms and conditions of the particular transaction which gives rise to the Claim which shall be Allowed without any further action by the holder of such Claim, except for submission to the Liquidation Trustee; and (c) an Administrative Claim for U.S. Trustee Fees or Section 503(b)(9) Administrative Claims, each holder of an Administrative Claim shall be required to file and serve upon all parties required to receive notice, an application for allowance of such Administrative Claim on or before the Postconfirmation Bar Date or be forever barred and discharged from doing so. An Administrative Claim with respect to which an application has been properly and timely filed pursuant to this section shall be treated and paid as an Administrative Claim when allowed by a Final Order.

(c) <u>Professional Fee Claims</u>. Each Professional whose retention has been approved by the Bankruptcy Court and who holds or asserts an Administrative Claim that is a Professional Fee Claim, and who has not previously filed and received a Final Order approving its final Fee Application, shall file and serve on all parties required to receive notice a final Fee Application on or before the Postconfirmation Bar Date.  The failure to timely File the Fee Application shall result in the Professional Fee Claim being forever barred and discharged.  A Professional Fee Claim shall be treated and paid as an Administrative Claim only to the extent allowed by Final Order. Any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim. Any retainer provided on account of a Professional Claim may be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis. Any Professional Claim based on payment under section 328 of the Bankruptcy Code by commission or contingency shall be allowed and paid as provided for in the retention order of the Bankruptcy Code, without need for the filing of any application or other document with the Bankruptcy Court notwithstanding anything contained herein to the contrary.

(d) <u>U.S. Trustee Fees</u>. The Estate, through payments made by the Liquidation Trustee from the Liquidation Assets, shall pay all unpaid U.S. Trustee Fees (if any) in cash on the later of (a) within fifteen (15) Business Days after the Effective Date (or as soon as reasonably practicable after such fees become due) or (b)   such date as distributions are made by the Liquidation Trust pursuant to the provisions of this Plan. The Liquidation Trustee shall pay postconfirmation U.S. Trustee Fees until the Debtor's Chapter 11 Case is converted, dismissed, or a Final Decree is issued, whichever occurs first.

## 2. Allowed Priority Tax Claims

A Priority Tax Claim is a Claim for an unsecured pre-petition tax due a governmental unit, including, but not limited to, income taxes entitled to priority in accordance with § 507(a)(8) of the Bankruptcy Code.   The Estate, through payments made by the Liquidation Trustee from the Liquidation Trust Assets, shall pay any Allowed Priority Tax Claims in full satisfaction, settlement, release, and discharge of, and in exchange for such Claims cash payments equal to the amount of the Allowed Priority Tax Claims on the later of (a) (i) within fifteen (15) Business Days after the Effective Date (or as soon as reasonably practical thereafter); (ii) fifteen (15)  Business Days following the date such Claim is Allowed by Final Order; or (iii)  on such date as distributions are made by the Liquidation Trust pursuant to the provisions of the Plan; or (b) such other less favorable treatment as may be agreed upon in writing by the Debtor or the Liquidation Trustee and such holder.

*The IRS filed the only Priority Tax Claim in the amount of $400 based on the IRS's estimate of 2024 taxes which the Debtor believes are $0. Thus, the Debtor does not believe there will be any Allowed Priority Tax Claims.*

## D. Treatment of Classified Claims

### 1. Treatment of Class 1: *VNB Secured Claims*

Class 1 consists of VNB's Secured Claims.  VNB received $1,438,891.45 from the cash Sale proceeds and shall be paid the remaining amount of its Allowed Secured Claims from any distributions made by the Liquidation Trust pursuant to the provisions of the Plan. VNB shall maintain its lien on all proceeds of the Sale, including the Royalties, until its Allowed Secured Claims are paid in full.

14- Second Amended Disclosure Statement in Support of First Amended Chapter 11 Plan of Liquidation

*The Debtor estimates the remaining amount of VNB's Secured Claims to be $251,018.55.*

**2.    Treatment of Class 2: *Itria Secured Claims***

To the extent Allowed, Itria's Secured Claims shall be paid from any distributions made by the Liquidation Trust pursuant to the provisions of the Plan.  If Itria's Claims are determined to not be Secured, such Claims, if Allowed, shall be treated as Class 4 General Unsecured Claims.

*The Debtor estimates Itria's Secured Claims to be $433,230.85.*

**3.    Treatment of Class 3: *Celtic Bank Secured Claims***

To the extent Allowed, Celtic Bank' Secured Claims shall be paid from any distributions made by the Liquidation Trust pursuant to the provisions of the Plan.  If Celtic Bank's Claims are determined to not be Secured, such Claims, if Allowed, shall be treated as Class 4 General Unsecured Claims.

*The Debtor estimates Celtic Bank's Secured Claims to be $0.*

**4.    Treatment of Class 4: *General Unsecured Claims***

 Class 4 consists of General Unsecured Claims. Each holder of an Unsecured Claim, to the extent Allowed, shall receive a pro-rata share of distributions made by the Liquidation Trust pursuant to the provisions of the Plan.

*Debtor estimates the Class 4 General Unsecured Claims to be less than  $2,273,947.12.*

**5.    Treatment of Class 5: *Insider Claims***

Class 5 consists of Insider Claims. Each holder of an Allowed Claim shall receive a pro-rata share of distributions made by the Liquidation Trust pursuant to the provisions of the Plan and only after all Allowed Secured and General Unsecured Claims are paid in full.

*The Claim by the Estate of Aniello Fusco in the amount of $120,000 is the only Insider Claim.*

**6.    Treatment of Class 6: *Equity Interests***

All Equity Interests shall be cancelled.  Each holder of an Allowed Equity Interest shall receive a pro-rata share of any distributions made by the Liquidation Trust only after all other Allowed Claims are paid in full pursuant to the provisions of the Plan.

*Suzanne Fusco is the sole Equity Interest holder.*

**E.    Executory Contracts and Leases**

The Plan provides that except to the extent that: (i) the Debtor previously assumed or rejected an executory contract or unexpired lease, (ii) prior to the Effective Date, the Bankruptcy Court entered an Order assuming an executory contract or unexpired lease, or (iii) at the Confirmation Hearing the Bankruptcy Court approves the assumption of any executory contracts or unexpired

leases, the Debtor's executory contracts and unexpired leases shall be deemed rejected on the Effective Date pursuant to Bankruptcy Code §§ 365 and 1123. Any Proofs of Claim based on the rejection of the Debtor's Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be filed with Bankruptcy Court and served on the Debtor and Liquidation Trustee on or before the Postconfirmation Bar Date which is the first Business Day thirty (30) calendar days after the Effective Date. All Allowed Claims arising from the rejection of the Debtor's prepetition executory contracts or prepetition unexpired leases shall be classified as Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

*The Debtor does not believe it has any executory contracts or unexpired leases.*

### ARTICLE VI
### MEANS FOR IMPLEMENTING THE PLAN

#### A.     The Liquidation Trust

The Plan creates a Liquidation Trust for the benefit of holders of Allowed Claims. All Estate Assets will be transferred to, and vested with, the Liquidation Trust on or after the Effective Date, free and clear of all liens, claims, interests, and encumbrances, except only for those liens, claims, interests, and encumbrances expressly and explicitly preserved or created under the Plan. The Liquidation Trust shall be a grantor trust under federal law and shall not have any liability to pay any income tax.

#### 1.  Liquidation Trust Assets

The Estate Assets will be  transferred to the Liquidation Trust and include the Debtor's cash on hand, proceeds from the Sale, including the right to receive the Royalties pursuant to the Royalty Agreement, and the Causes of Action (including Avoidance Actions).

#### 2.  Administration of the Trust

The Liquidation Trust shall be solely and fully administered by the Liquidation Trustee subject to resignation and replacement as otherwise provided for in the Liquidation Trust Agreement. The Liquidation Trustee shall have the fiduciary duties of a trustee to the Liquidation Trust and, without further need for Bankruptcy Court approval (unless otherwise indicated), the Liquidation Trustee shall have the authority to carry out and implement all provisions of the Plan. The Liquidation Trustee shall have all of the rights, powers, and privileges set forth in the Plan, the Confirmation Order, and the Liquidation Trust Agreement. The Liquidation Trustee may take all such actions as it deems necessary and appropriate to effectuate the purposes of the Plan, including but not limited to the following: (a) make all distributions contemplated under the Plan; (b) enter into any agreement on behalf of the Liquidation Trust required by or consistent with the Plan and perform all of the obligations required of the Liquidation Trustee under the Liquidation Trust Agreement or the Plan; (c) abandon any assets of the Liquidation Trust if the Liquidation Trustee concludes that such assets are of no material benefit to the beneficiaries; (d) participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party, intervenor or otherwise in any legal proceeding, administrative proceeding or other non-judicial proceeding and litigate Claims, Causes of Action, counterclaims, defend the Liquidation Trust or otherwise act in any judicial proceeding on behalf of the Liquidation Trust, including without limitation all state and federal causes of action or any other litigation which constitute a Liquidation Trust Asset or otherwise

benefits the Creditors and pursue to settlement or judgment such actions. The Liquidation Trustee shall have standing and may engage professionals to prosecute Causes of Action, including without limitation, Avoidance Actions, and otherwise represent the Liquidation Trust generally; (e) participate as a party-in-interest in any proceeding before the Bankruptcy Court involving the Bankruptcy Case; (f) act in the name of or in the place of the Liquidation Trust or the Debtor in any action before the Bankruptcy Court or any other judicial or administrative body; (g) take actions and exercise remedies against any entity or Person that owes money to or has breached the rights of the Debtor, the Estate, or the Liquidation Trust, including the remedies available under any deed of trust, security agreement, contract, promissory note, bond, guarantee, other legal or equitable right or other instrument or document; make compromises regarding any deed of trust, security agreement, promissory note, bond, guarantee, other legal or equitable right or other instrument or document; and, declare, negotiate or waive defaults regarding any deed of trust, security agreement, promissory note, bond, guarantee, other legal or equitable right or other instrument or document; (h) reach an agreement with the Debtor, its former employees, or their counsel to take specific action on behalf of the Liquidation Trust or the Debtor; (i) select and employ such professionals, consultants, agents or employees, whether or not formerly employed or engaged by the Debtor, as the Liquidation Trustee deems necessary to assist in the administration of the affairs of the Liquidation Trust and compensate such persons to whom the Liquidation Trustee may delegate actions, including (a) executing tax returns, corporate dissolution instruments or other documents on behalf of Debtor after the Effective Date, and (b) assisting the Liquidation Trustee with, without limitation, Claim objections or supporting Avoidance Claims or other Causes of Action; (j) propose, and if appropriate, take steps to obtain Bankruptcy Court approval, of any amendment, modification or supplement to this Plan or the Liquidation Trust Agreement, (k) file dissolution/termination documents with the appropriate governmental agencies to dissolve the Debtor; (l) receive, conserve and manage the Liquidation Trust Assets and sell, pursuant to Bankruptcy Code §§ 363(f) and 1123(a)(5) and the Plan, or otherwise dispose of such assets for a price and upon such terms and conditions as the Liquidation Trustee deems most beneficial to the Liquidation Trust Beneficiaries and execute such deeds, bills of sale, assignments and other instruments in connection therewith; (m) open and maintain bank accounts on behalf of or in the name of the Liquidation Trust; (n) pay all taxes, make all tax withholdings and file tax returns and tax information returns and make tax elections by and on behalf of the Liquidation Trust; (o) pay all lawful expenses, debts, and liabilities of the Liquidation Trust; (p) enforce all provisions of the Plan, Confirmation Order, and the Liquidation Trust Agreement; (q) protect, perfect and defend the title to any of the Liquidation Trust Assets and enforce any bonds, mortgages or other obligations or hens owned by the Liquidation Trust; (r) carry insurance coverage, including a defalcation bond or other insurance to protect the Liquidation Trust and the Liquidation Trustee against claims brought against the Liquidation Trust, and the Liquidation Trustee, acting within such capacities, in amounts as the Liquidation Trustee deems advisable; (s) establish such reserves for taxes, assessments and other expenses of administration of the Liquidation Trust (including, without limitation, the Disputed Claims Reserve and the Liquidation Trust Expense Reserve as defined in the Liquidation Trust Agreement) as in the Liquidation Trustee's judgment may be necessary and appropriate for the proper operation of matters incident to the affairs of the Liquidation Trust; (t) pursue claims or Causes of Action under any of the Debtor's current or past insurance policies, in accordance with the terms of such policy; (u) stand in the Debtor's shoes with respect to, and have standing to pursue, all claims and Causes of Action (including without limitation Avoidance Actions) and collect all proceeds of any such Causes of Action on behalf of the Liquidation Trust, including without limitation proceeds of any insurance policy; (v) stand in the Debtor's shoes as the beneficiary of all applicable insurance policies of the Debtor; and (w) exercise such other powers and duties as

17- Second Amended Disclosure Statement in Support of First Amended Chapter 11 Plan of Liquidation

are necessary or appropriate in the Liquidation Trustee's sole discretion to accomplish the purposes of the Plan.

### 3.  Trust Governance

All governance and other matters regarding the Liquidation Trust shall be provided for in the Liquidation Trust Agreement.

### 4.  Trust Distributions

The Liquidation Trustee shall make distributions from the Liquidation Trust Assets from time to time and as soon as reasonably possible after the receipt of any Royalties as follows:

a.  First, to pay the Liquidation Trustee's fees and expenses then owed;

b.  Second, 25% to holders of Allowed Administrative, Professional and Priority Tax Claims and U.S. Trustee fees and 75% to Class 1—Allowed VNB Secured Claims until paid in full;

c.  Third, if either the holders of Allowed Administrative, Professional and Priority Tax Claims and U.S. Trustee fees or the Class 1—Allowed VNB Secured Claims are paid in full, the other shall receive 100% until paid in full;

d.  Fourth, pro rata to  Class 2—Itria Secured Claims and Class 3—Celtic Bank Secured Claims, if Allowed, until paid in full;

e.  Fifth, pro rata to holders of  Allowed Class 4—General Unsecured Claims until paid in full;

f.  Sixth,  pro rata to holders of Allowed Class 5—Insider Claims until paid in full;

g.  Seventh, after all other Allowed Claims are paid in full, to holders of Allowed Equity Interests.

All distributions shall be payable only to Liquidation Trust Beneficiaries of record as of the Distribution Record Date (as defined in the Liquidation Trust Agreement) and in amounts equal to such Liquidation Trust Beneficiary's pro rata portion of the distribution. All distributions shall be payable in cash by wire transfer, check or such other method as the Liquidation Trustee deems appropriate under the circumstances. Distributions may be made to Liquidation Trust Beneficiaries at any of the following addresses, in the Liquidation Trustee's sole discretion: (a) the address listed in the Proofs of Claim filed by such beneficiary; (b) the address listed for such beneficiary in the Debtor's Schedules; or (c) such address set forth in any written notice of address change filed with the Clerk of Court for the Bankruptcy Case prior to the Effective Date and, after such Effective Date, filed with the Clerk of Court and served on the Liquidation Trustee The Trustee is not obligated to make any effort to determine the correct address of any Liquidation Trust Beneficiary. If any holder's distribution is returned as undeliverable or is otherwise unclaimed, it will be treated in accordance the Liquidation Trust Agreement and the Plan.

If any property to be distributed on account of the Plan remains unclaimed for a period of one (1) year after it has been delivered (or delivery has been attempted) or has otherwise been made

available, such unclaimed property shall be forfeited by the Person entitled to receive the property and the unclaimed property and the right to receive it shall revert to and vest in the Liquidation Trust as appropriate.

### 5.  Bankruptcy Court Jurisdiction

The Bankruptcy Court shall have jurisdiction over all matters regarding the management of the Liquidation Trust and over the Liquidation Trustee, and over such other matters affecting the Liquidation Trust and the liquidation of the Liquidation Trust Assets as is otherwise appropriate and as is provided for in this Plan, to the maximum extent possible. The Bankruptcy Court shall likewise have continuing jurisdiction to provide guidance, control, and oversight of the Liquidation Trust and the Liquidation Trustee, and the Liquidation Trustee shall have the ability, from time to time, to seek such guidance, control, oversight, and orders from the Bankruptcy Court regarding the Liquidation Trust and its administration as is otherwise appropriate.

### 6.  Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and, in the case of an Allowed Secured Claim, satisfaction in full of the Claim, all mortgages, deeds of trust, liens, pledges, or other security interests against any property of the Debtor's Estate shall be fully released, settled, and compromised, and the holder of such mortgages, deeds of trust, liens, pledges, or other security interest against any property of the Debtor's Estates shall be authorized to take such actions as may be reasonably requested by the Debtor to evidence such releases.

### 7.  Cancellation of Notes, Instruments, Certificates, and Other Documents

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims or Equity Interests shall be cancelled and the obligations of the Debtor thereunder or in any way related thereto shall be discharged; provided, however, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the holder of a Claim or Equity Interest shall continue in effect solely for purposes of allowing holders of Allowed Claims to receive distributions under the Plan.

### 8.  Corporate Existence of Debtor

The Liquidation Trustee shall manage the Debtor after the Effective Date solely for the purpose of ensuring and effectuating its winding down, dissolution, termination, and filing and issuance of final tax returns and documents. The Liquidation Trustee shall take such steps under applicable nonbankruptcy law to wind down the affairs, dissolve, and to terminate the corporate existence of the Debtor, with the Plan satisfying all applicable nonbankruptcy law regarding the same, including all notice and other liquidation and wind down provisions and procedures; provided, however, that during the existence of the Liquidation Trust, the Liquidation Trustee shall have the exclusive authority to file Debtor's tax returns, and issue final tax documents, including K-1s, as appropriate under applicable nonbankruptcy law evidencing the foregoing.

### 9.  Termination of the Trust

The Liquidation Trust shall continue to exist until the earlier of: (a) the fifth (5th) year anniversary of the Effective Date (as such date may be extended by Order of the Bankruptcy Court); and (b) the time the Liquidation Trustee has (i) administered all Liquidation Trust Assets and made a final distribution to holders of Allowed Claims in accordance with the terms of the Plan, Confirmation Order, and the Liquidation Trust Agreement and (ii) performed all other duties required by the Plan, Confirmation Order, and the Liquidation Trust Agreement (the "Liquidation Trust Termination Date"). Multiple extensions of the Liquidation Trust Termination Date may be obtained so long as Bankruptcy Court approval is obtained prior to the expiration of each extended term. As soon as reasonably practicable after the final distribution, the Liquidation Trustee shall dissolve the Liquidation Trust pursuant to the Liquidation Trust Agreement. Upon dissolution, the Liquidation Trustee's duties under the Liquidation Trust Agreement and this Plan shall terminate and the Liquidation Trustee shall be discharged.

After the termination of the Liquidation Trust and for the purpose of liquidating and winding up the affairs of the Liquidation Trust, the Liquidation Trustee shall continue to act as such until all of the Liquidation Trustee's duties under the Plan and this Liquidation Trust Agreement have been fully performed. Upon distribution of all of the Liquidation Trust Assets, or the proceeds thereof, the Liquidation Trustee shall hold the books, records and files delivered to or created by the Liquidation Trustee for a period of three (3) years after the final Distribution is made. All costs and expenses associated with the storage of such documents shall be paid by the Liquidation Trust. At the Liquidation Trustee's sole discretion, all such records and documents may be destroyed at any time after three (3) years from the distribution of all of the Liquidation Trust Assets.

Upon termination of the Liquidation Trust, the Liquidation Trustee shall file an accounting with the Bankruptcy Court setting forth (a) the amount he has collected and disbursed and (b) the fees and expenses incurred in administering the Liquidation Trust, including the fees and expenses incurred by the Liquidation Trustee and any attorneys, accountants, advisors, or other professionals employed by the Liquidation Trustee or Liquidation Trust. The Liquidation Trustee shall seek, on twenty-one (21) days negative notice to those entitled to notice as provided for in the Liquidation Trust Agreement, the issuance and entry of any orders necessary (if any) to approve such accounting and discharge the Liquidation Trustee from further responsibilities together with any and all liability for acting as Liquidation Trustee under this Plan and the Liquidation Trust Agreement.

## B. The Liquidation Trustee

The Liquidation Trust will be Jason Rae or his successor. The Liquidation Trustee shall be entitled to compensation of up to $525.00 per hour, and the reimbursement of reasonable expenses, subject to adjustment and other provisions provided for in the Liquidation Trust Agreement.

## C. Preservation of Rights of Action

The Liquidation Trustee may pursue any claims or recovery actions held by the Debtor. Unless expressly and specifically released in the Plan or through any order entered in the Bankruptcy Case, all Causes of Action, assertible by the Debtor or the Estate, are reserved and preserved under the Plan and transfer to, and vest in, the Liquidation Trust as otherwise provided for in the Plan including any rights to or claims for indemnity.

## ARTICLE VII
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

### A. Objection Deadline; Prosecution of Objections

The Plan allows the Liquidation Trustee to enforce, sue on, settle, or compromise (or decline to do any of the foregoing) any and all Claims except Allowed Claims or as otherwise provided in the Plan, or in the Confirmation Order or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan. If he elects to do so, the Liquidation Trustee shall file objections to Claims no later than one-hundred and eighty (180) days after the Effective Date (the "Claim Objection Deadline") and shall serve such objections upon the holders of each of the Claims to which objections are made. The Liquidation Trustee shall be authorized to resolve all Disputed Claims by withdrawing or settling such objections thereto, or by litigating to judgment in the Bankruptcy Court or such other court having competent jurisdiction the validity, nature, or amount thereof.  Any Proofs of Claim that are filed after the applicable Bar Date, including amendments to existing Proofs of Claim, or applications for the allowance of an Administrative Claim that are filed after the Postconfirmation Bar Date shall be deemed invalid and not Allowed unless (a) consented to by the Liquidation Trustee or (b) authorized by the Bankruptcy Court. The Liquidation Trustee shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim immediately before the Effective Date.

### B. No Distribution Pending Allowance

Except as otherwise agreed by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Claims have been Allowed or expunged. No Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed pursuant to the Plan or a Final Order, including the Confirmation Order (when it becomes a Final Order), allowing such Claim.

## ARTICLE VIII
## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

### A. Conditions Precedent to Confirmation and Effectiveness of the Plan

The Plan will not become effective until the following conditions shall have been satisfied: (i) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtor; (ii) on the fifteenth (15th) day after the Confirmation Date, no notice of appeal of the Confirmation Order shall have been filed or, if filed, no order staying the Confirmation Order shall have been entered by such date; (iii) the Liquidation Trustee shall have negotiated and executed the Liquidation Trust Agreement; (iv) all other specific condition precedents contained in the Plan shall have been satisfied, if any.

### B. Notice of Effective Date

Promptly after the occurrence of the Effective Date, the Debtor shall file with the clerk of the Bankruptcy Court notice that the Plan has become effective, which the Debtor shall serve on all

Persons served with a copy of the Disclosure Statement; *provided, however,* that the failure to file and serve such notice shall not affect the effectiveness of the Plan.

## ARTICLE IX
## EFFECTS OF CONFIRMATION

On the Effective Date, except as otherwise provided in the Plan, (a) the Liquidation Trust Assets shall vest in the Liquidation Trust, subject to the rights and interests of the Liquidation Trust's beneficiaries, and (b) the Plan shall be binding upon the Debtor and all present and former holders of Claims against and Equity Interests in the Debtor, regardless of whether any such holder of a Claim or Equity Interest has voted or failed to vote to accept or reject the Plan and regardless of whether any such holder of a Claim or Equity Interest is entitled to receive any distribution under the Plan.

If the Plan is confirmed by the Bankruptcy Court, the Debtor will not receive a discharge under Chapter 11 of the Bankruptcy Code. **HOWEVER, THE PLAN CONTAINS THE FOLLOWING INJUNCTION PROVISIONS WHICH THE DEBTOR BELIEVES ARE STANDARD AND NECESSARY FOR THE CONFIRMATION OF THE PLAN AND THE ESTABLISHMENT OF THE LIQUIDATION TRUST. THESE PROVISIONS MAY PREVENT YOU FROM SEEKING TO ASSERT OR COLLECT YOUR CLAIM EXCEPT THROUGH THE PLAN. YOUR RIGHTS MAY BE SEVERELY IMPACTED. STUDY THE PLAN CLOSELY AND CONSIDER CONSULTING WITH LEGAL COUNSEL REGARDING THE PLAN AND YOUR RIGHTS AND LIMITATIONS THEREUNDER.**

### A. Plan Injunction

**EFFECTIVE IMMEDIATELY ON THE EFFECTIVE DATE, AND WITHOUT NEED FOR FURTHER ORDER, DOCUMENT, ACTION, OR INSTRUMENT, THE CONFIRMATION ORDER SHALL, AND SHALL BE DEEMED TO, PERMANENTLY ENJOIN ALL PERSONS FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY CLAIM: (A) COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTOR OR THE ESTATE OR ANY OF ITS PROPERTY, ON ACCOUNT OF A CLAIM OR DEBT THAT IS TREATED UNDER THE PLAN, EXCEPT SOLELY AS PERMITTED UNDER THE PLAN; (B) ENFORCING, LEVYING, ATTACHING, COLLECTING, OR OTHERWISE RECOVERING IN ANY MANNER OR BY ANY MEANS, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTOR OR THE ESTATE OR ANY OF ITS PROPERTY, ON ACCOUNT OF A CLAIM OR DEBT THAT IS TREATED UNDER THE PLAN, EXCEPT SOLELY AS PERMITTED UNDER THE PLAN; (C) CREATING, PERFECTING OR ENFORCING IN ANY MANNER DIRECTLY OR INDIRECTLY, ANY LIEN, CHARGE OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR OR THE ESTATE OR ANY OF ITS PROPERTY, ON ACCOUNT OF A CLAIM, INTEREST, LIEN, OR DEBT THAT IS TREATED UNDER THIS PLAN, EXCEPT SOLELY AS PERMITTED UNDER THIS PLAN; AND (D) PROCEEDING IN ANY MANNER IN ANY PLACE WHATSOEVER AGAINST THE DEBTOR OR THE ESTATE OR ANY OF ITS PROPERTY WITH RESPECT TO ANY PROPERTY TO BE DISTRIBUTED OR TRANSFERRED UNDER THE PLAN OR CLAIM THAT IS SUBJECT TO THE PLAN, IN ANY WAY THAT DOES NOT CONFORM TO, OR COMPLY, OR IS INCONSISTENT WITH, THE PROVISIONS OF THE PLAN; *PROVIDED, HOWEVER,* THAT SUCH INJUNCTION**

**SHALL NOT PRECLUDE ANY PARTY IN INTEREST FROM SEEKING TO ENFORCE OR INTERPRET THE TERMS OF THES PLAN THROUGH AN ACTION COMMENCED IN THE BANKRUPTCY COURT OR OTHER APPROPRIATE COURT, FROM APPEALING THE CONFIRMATION ORDER, OR FROM FILING A CONTINUATION STATEMENT TO CONTINUE IN EFFECT A PERFECTED SECURITY INTEREST THAT SURVIVES THE EFFECTIVE DATE.**

### B. Liquidation Trustee Liability; Indemnification

**THE PLAN PROVIDES THAT THE LIQUIDATION TRUSTEE SHALL NOT BE LIABLE FOR ANY ACT OR OMISSION TAKEN OR OMITTED TO BE TAKEN IN HIS CAPACITY AS THE LIQUIDATION TRUSTEE, OTHER THAN ACTS OR OMISSIONS RESULTING FROM THE LIQUIDATION TRUSTEE'S WILLFUL OR RECKLESS MISCONDUCT, GROSS NEGLIGENCE, OR FRAUD. THE LIQUIDATION TRUSTEE MAY, IN CONNECTION WITH THE PERFORMANCE OF HIS FUNCTIONS, AND IN HIS SOLE AND ABSOLUTE DISCRETION, CONSULT WITH ATTORNEYS, ACCOUNTANTS, AND AGENTS, AND SHALL NOT BE LIABLE FOR ANY ACT TAKEN, OMITTED TO BE TAKEN, OR SUFFERED TO BE DONE IN ACCORDANCE WITH ADVICE OR OPINIONS RENDERED BY SUCH PERSONS. NOTWITHSTANDING SUCH AUTHORITY, THE LIQUIDATION TRUSTEE SHALL BE UNDER NO OBLIGATION TO CONSULT WITH HIS ATTORNEYS, ACCOUNTANTS, OR AGENTS, AND HIS DETERMINATION TO NOT DO SO SHOULD NOT RESULT IN IMPOSITION OF LIABILITY ON THE LIQUIDATION TRUSTEE UNLESS SUCH DETERMINATION IS BASED ON WILLFUL OR RECKLESS MISCONDUCT, GROSS NEGLIGENCE, OR FRAUD. THE LIQUIDATION TRUST SHALL INDEMNIFY AND HOLD HARMLESS THE LIQUIDATION TRUSTEE AND HIS AGENTS, REPRESENTATIVES, PROFESSIONALS, AND EMPLOYEES FROM AND AGAINST AND IN RESPECT TO ANY AND ALL LIABILITIES, LOSSES, DAMAGES, CLAIMS, COSTS AND EXPENSES, INCLUDING, BUT NOT LIMITED TO, ATTORNEYS' FEES AND COSTS ARISING OUT OF OR DUE TO THEIR ACTIONS OR OMISSIONS, OR CONSEQUENCES OF SUCH ACTIONS OR OMISSIONS, WITH RESPECT TO THE LIQUIDATION TRUST OR THE IMPLEMENTATION OR ADMINISTRATION OF THIS PLAN; *PROVIDED, HOWEVER*, THAT NO SUCH INDEMNIFICATION WILL BE MADE TO SUCH PERSONS FOR SUCH ACTIONS OR OMISSIONS AS A RESULT OF WILLFUL OR RECKLESS MISCONDUCT, GROSS NEGLIGENCE, OR FRAUD.**

### ARTICLE X
### MISCELLANEOUS PROVISIONS

### A. Continuation of Automatic Stay

The automatic stay provided by section 362(a) of the Bankruptcy Code shall remain in effect through to the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to separate order, and shall terminate on the Effective Date, at which time the discharge and injunction provisions of this Plan and the Bankruptcy Code shall control.

### B. Reservation of Rights/No Admission

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan,

23- Second Amended Disclosure Statement in Support of First Amended Chapter 11 Plan of Liquidation

or the taking of any action by the Debtor with respect to the Plan, or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the holders of Claims or Equity Interests prior to the Effective Date. Nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein including, without limitation, liability of any person on any Claim or the propriety of any classification of any Claim.

### C.  Modification of Plan

The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth therein. Ater the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

### D.  Revocation of Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans.  If the Debtor revokes or withdraw this Plan or if entry of the Confirmation Order does not occur, or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Equity Interests; (b) prejudice in any manner the rights of the Debtor or any other Person or Entity; or (c) constitute an admission of any sort by the Debtor or any other Person or Entity.

### E.  Plan Documents

On or before the Effective Date, the Debtor may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof. Any documents, forms, lists, agreements, and any exhibits or supplements to this Plan filed prior to the conclusion of the Confirmation Hearing shall automatically become part of this Plan as if set forth in full herein if it is contemplated by this Plan or is intended to address any issue in this Plan.

### F.  Entire Agreement/Plan Controls

The Plan will supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which will become merged and integrated into the Plan. To the extent there is an inconsistency or ambiguity between any term or provision contained in this Disclosure Statement and the Plan, the terms and provisions of the Plan shall control.

### G.  No Stay of Confirmation Order

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise

24- Second Amended Disclosure Statement in Support of First Amended Chapter 11 Plan of Liquidation

applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

### H. Retention of Jurisdiction

Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction to the same extent the Bankruptcy Court had jurisdiction immediately prior to the confirmation of this Plan (and to the extent that the Bankruptcy Court subsequently acquires jurisdiction), including but not limited to, for the purpose of interpreting or enforcing this Plan, any confirmation order, any other matter relating to or arising under title 11 as they relate to the Debtor or the Plan.

### I. Governing Law

Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal or state laws are applicable, or any prepetition contract provides for the application of the law of a different state, the laws of the State of Texas shall govern the construction, implementation and enforcement of this Plan and all rights and obligations arising under the Plan, without giving effect to the principles of conflicts of law.

**ARTICLE XI**
**RISK FACTORS**

### A. Recovery Risks

The principal risk associated with the Plan is the Liquidation Trust's collection of the Royalties to be paid under the Royalty Agreement. The Royalties will be the primary source of payment for the Liquidation Trust to pay Allowed Claims. Payment of Allowed Claims is dependent on the Liquidation Trustee collecting the Royalties. The Royalties are to be paid annually based on a percentage of Silver Palate net sales of Products (as defined in the Royalty Agreement). As the collection of the Royalties is dependent on Silver Palate's sales, there is no guarantee that that the Liquidation Trust will collect the Royalties or the amount that may be collected or when. This risk of collection would also exist if the Debtor's Bankruptcy Case were converted to a Chapter 7.

### B. Bankruptcy Risks

Both the confirmation and consummation of the Plan are subject to a number of risks. Specifically, if certain standards set forth in the Bankruptcy Code are not met, the Bankruptcy Court will not confirm the Plan even if Creditors vote to accept it. The Debtor believes that the solicitation of votes on the Plan will comply with Bankruptcy Code § 1126(b), that the Plan meets the requirements for confirmation, and that the Bankruptcy Court will confirm the Plan. However, the Debtor cannot provide any assurance that the Plan will be confirmed or that modifications of the Plan will not be required to obtain Confirmation of the Plan, or that any such modifications will not require a re-solicitation of acceptances. If the Bankruptcy Court were to determine that the requirements for confirmation were not met, it could require the Debtor to re-solicit acceptances, which could delay and/or jeopardize confirmation of the Plan, or it could convert the Case to chapter 7.

Even if the Plan is confirmed, as discussed herein, the Plan provides that certain conditions precedent must be met prior to the occurrence of the Effective Date. There is no guarantee that the conditions will be met. In particular, there is the potential that the Bankruptcy Court confirm the Plan

and that there is an appeal of the Confirmation Order. If the conditions precedent to the Plan are not met, the Plan would be deemed null and void and (a) the Debtor or any other party might propose or solicit votes on an alternative plan, (b) the Bankruptcy Case might be dismissed, or (c) the Bankruptcy Case might be converted to a case under chapter 7.

**ARTICLE XII**
**PLAN ALTERNATIVES**

If the Plan is not confirmed and consummated, the alternatives to the Plan are (a) the preparation and presentation of an alternative plan of reorganization or liquidation, or (b) liquidation under chapter 7 of the Bankruptcy Code.

The Debtor or any other party in interest could attempt to formulate a different plan. None of the key constituents have indicated a desire to do so. However, as the Debtor has sold the majority of its assets, any other plan would likely be a liquidation of the Debtor's remaining assets which the Debtor believes would not be a superior alternative to this Plan and only further delay the Bankruptcy Case and result in increased costs and expenses, thereby diminishing potential recovery to creditors.

The Debtor could be liquidated under Chapter 7 of the Bankruptcy Code. This alternative would likewise result in further delay and increased costs and diminish creditor recovery. A Chapter 7 Trustee would be appointed, and he would retain counsel. This would result in additional administrative expenses that must be paid before general unsecured creditors can be paid.

The Debtor has not prepared a Chapter 7 liquidation analysis, principally because the Debtor has liquidated the majority of its assets already and does not believe that a liquidation analysis is required or is necessarily helpful in this case as the primary Estate Assets consist of the cash on hand and the right to receive $2.5 million in Royalties pursuant to the Royalty Agreement.

**ARTICLE XIII**
**TAX CONSEQUENCES OF THE PLAN**

**THE DEBTOR HAS NOT EVALUATED THE TAX CONSEQUENCES OF THE PLAN TO HOLDERS OF CLAIMS AND EQUITY INTERESTS. EACH HOLDER OF A CLAIM AGAINST, OR INTEREST IN, THE DEBTOR IS URGED TO CONSULT ITS OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN UNDER FEDERAL AND APPLICABLE STATE, LOCAL AND FOREIGN TAX LAWS**

**ARTICLE XIV**
**CONCLUSIONS AND RECOMMENDATION**

For all of the reasons set forth in this Disclosure Statement, the Debtor believes confirmation and consummation of the Plan is preferable to other available alternatives. Consequently, the Debtor urges all holders of Claims who are entitled to vote to ACCEPT the Plan, and to duly complete and return their Ballots in accordance with the instructions on the Ballots.

Dated: July 31, 2025

Respectfully submitted,

**ROSS & SMITH, PC**

By:  ___/s/ *Frances A. Smith*_____
Frances A. Smith
State Bar No. 24033084
Jonathan Gitlin
State Bar No. 24064305
700 North Pearl Street, Suite 1610
Dallas, Texas 75201
Telephone: 214-377-7879
Facsimile: 214-377-9409
Email: frances.smith@ross-and-smith.com
Email: jonathan.gitlin@ross-and-smith.com

**COUNSEL TO DEBTOR**

27- Second Amended Disclosure Statement in Support of First Amended Chapter 11 Plan of Liquidation